744 P.2d 170

**Daniel BAKER and Dorothy Baker, Plaintiffs,**

v.

**A.J. ARMSTRONG, Defendant–Third Party Plaintiff–Appellant,**

v.

**GENERAL ACCIDENT INSURANCE COMPANY, Third–Party Defendant–Appellee.**

No. 17063.

Supreme Court of New Mexico.

Oct. 8, 1987.

As Amended on Denial of Rehearing Oct. 28, 1987.

Shamas & Perrin, K. Douglas Perrin, Paul Snead, Roswell, for defendant-third party plaintiff-appellant.

Dines & McCary, Jim Dines, Melissa Fassett, Albuquerque, for third-party defendant-appellee GAIC.

Charles C. Currier, Roswell, for plaintiffs.

Civerolo, Hansen & Wolf, Cynthia A. Fry, Albuquerque, amicus curiae NM Defense Lawyers Ass'n.

William H. Carpenter, Albuquerque, amicus curiae NM Trial Lawyers Ass'n.

## OPINION

RANSOM, Justice.

A.J. Armstrong, who had been sued by the Bakers for damages arising from an automobile accident, brought a third-party action against his insurer seeking a declaratory judgment that the Bakers' punitive damages claim was covered by his insurance policy. Armstrong appeals the summary judgment granted in favor of his insurer, General Accident Insurance Company.

At issue is whether General Accident contracted to pay punitive damages and, if it did, whether such a provision would be unenforceable as against public policy. Contracts in violation of public policy of the state cannot be enforced. *DiGesu v. Weingardt*, 91 N.M. 441, 575 P.2d 950 (1978).

■ The automobile insurance policy in question provided that the insurer pay "damages for bodily injury or property damage for which any covered person becomes legally responsible because of an auto accident." In applying this clear and unambiguous language, we need not resort to rules of interpretation or construction. *See McKinney v. Davis*, 84 N.M. 352, 503 P.2d 332 (1972). The policy has no provision that excluded damages awarded to punish for driving in a grossly negligent, reckless, wanton or willful manner. Therefore, if Armstrong has become legally responsible to pay punitive damages for bodily injury, the contract language applies to that responsibility.

■ General Accident argues that punitive damages are for punishment and not for actual bodily injury or property damage. However, actual bodily injury or property damage is a prerequisite to punitive damages, and the punishment must be reasonably related to the injury or damage. SCRA 1986, 13–1827. Clearly, the punitive damages in question were to punish for bodily injury caused by driving in a grossly negligent, reckless, wanton or willful manner. Without bodily injury or property damage, there would be no cause of action for the conduct charged. *See Stewart v. State Farm Mut. Auto Ins. Co.*, 104 N.M. 744, 726 P.2d 1374 (1986).

While General Accident could have contracted to exclude punitive damages, it did not do so by the language it chose to use. It argues that the "uniform net loss" provision used in almost all liability insurance contracts typically states that the insurance company will pay "all sums" which the insured shall become legally obligated to pay arising from bodily injury or property damage, and that, therefore, General Accident excluded punitive damages by not agreeing to pay "all sums." As the phrase was so artfully turned in oral argument, we agree that, "rich and resourceful as is the English language," General Accident could have excluded punitive damages by means other than forgoing use of the words "all sums."

■ Our application of the clear language of the policy promotes the reasonable expectations of the average insured who contemplates protection against claims of any character for which he becomes liable in the operation of an automobile. A court should not construe an exclusion of liability for punitive damages where there is nothing in the insuring clause to forewarn an insured that such was to be the intent of the parties. *See Price v. Hartford Accident and Indem. Co.*, 108 Ariz.

485, 487–88, 502 P.2d 522, 524–25 (1972) (*quoting* 7 Appelman's Insurance Law & Practice, § 4312 at 132–36 and Cum.Supp. at 86). *See also Lopez v. Foundation Reserve Ins. Co.*, 98 N.M. 166, 646 P.2d 1230 (1982) (the reasonable expectations of the insured are to be fulfilled).

This state has never announced a public policy which would render unenforceable contracts insuring against liability for punitive damages. To the contrary, in defining vehicle insurance, the New Mexico insurance code allows for insurance against any loss, liability or expense resulting from the use of a vehicle. NMSA 1978, § 59A-7-7 (Orig.Pamp.1984). In *Greenwood Cemetery, Inc. v. Travelers Indemn. Co.*, 238 Ga. 313, 232 S.E.2d 910 (1977), the court reasoned that, because the insurance code allowed for insurance against all legal liabilities, insurance was allowed against the legal award of punitive damages.

Furthermore, under the tort claims act, a governmental entity is required to pay any punitive damages awarded against a public employee acting within the scope of his duty and not acting fraudulently or with actual intentional malice. NMSA 1978, § 41-4-4 (Repl.Pamp.1986). The medical malpractice act allows for punitive damages to be paid from the proceeds of the health care provider's insurance contract if the contract expressly provides coverage. NMSA 1978, § 41-5-7(H) (Repl.Pamp. 1986). Clearly, insurance contracts covering punitive damages do not contravene positive law of this state nor any rule of public morals.

Prior to *Stewart*, this Court, in *Wolff v. General Cas. Co. of Am.*, 68 N.M. 292, 361 P.2d 330 (1961), held that, under the terms of the insurance policy involved, "there is no public policy in New Mexico which requires denial of coverage [for willful acts]." 68 N.M. at 298, 361 P.2d at 335. There, the Court was reviewing a blanket liability policy which did not have language excluding coverage for the intentional act of assault and battery for which Wolff was seeking indemnification from compensatory and punitive damages. The grant of the insurer's motion for summary judgment

absolved the insurer from liability for any of Wolff's damages. On appeal, in holding that coverage should not be denied, this Court, in essence, refused to extend the public policy prohibiting insurance coverage for intentionally produced injuries to unintended consequences of intentional acts. The Court, however, never reached the separate issue of the insurability of punitive damages. *See* Hall, *The Validity of Insurance Coverage for Punitive Damages—An Unresolved Question?*, 4 N.M.L. Rev. 65 (1973).

Nor does *Stewart* answer whether New Mexico's public policy permits insuring against liability for punitive damages. In *Stewart*, this Court limited its discussion to whether an insurer was liable under an uninsured motorist provision to pay the punitive damages awarded to its insured after arbitration. Although the insurer was held liable, the decision does not conclusively establish a public policy allowing the insurability of punitive damages. The Court made clear that it was not subverting or undercutting the purpose of punitive damages. 104 N.M. at 747, 726 P.2d at 1377. The insurer, after paying its insured, could seek recovery from the uninsured tortfeasor. Because the tortfeasor would experience the intended punishment by having to pay the punitive damage award, the policy underlying punitive damages would not be undermined.

The seminal case outlining the public policy reasons which have been expressed against allowing liability coverage for punitive damages is *Northwestern Nat'l Casualty Co. v. McNulty*, 307 F.2d 432 (5th Cir.1962). The public policy against coverage is to make effective the discouragement of wrongdoing by the imposition of punishment. Damages for punishment and deterrence must ultimately rest on the party actually responsible for the wrongdoing. "If that person were permitted to shift the burden to an insurance company, punitive damages would serve no useful purpose. Such damages do not compensate the plaintiff.... And there is no point in punishing

the insurance company; it has done no wrong." *Id.* at 440.

More persuasive to us, however, is that the purchase of insurance cannot be presumed by this Court to encourage the conduct sought to be deterred by exemplary or punitive damages. Further, it is common knowledge that the prospect of cancelled coverage or rated premiums is a strong deterrent to bad driving in today's society. What is true for coverage against liability for compensatory damages seems true for those who seek to maintain coverage against the eventuality of a punitive damage award—it being well to remember that the most careful driver may wish to insure against the adverse finding of those charged with weighing the evidence to determine (by a preponderance) whether an act or omission constituted ordinary or gross negligence. Compared to any dilution of the punishment effect of a decision publicly awarding punitive damages, the right of a person and his or her insurer to freely contract for insurance against an adjudication of liability for such conduct is the more weighty policy consideration. *See General Elec. Credit Corp. v. Tidenberg,* 78 N.M. 59, 62, 428 P.2d 33, 36 (1967) ("[P]ublic policy encourages freedom between competent parties of the right to contract, and requires the enforcement of contracts, unless they clearly contravene some positive law or rule of public morals." ).

Aside from the dilution effect on deterrence and punishment, it is argued that the allowance of insurance against punitive damages gives rise to conflict of interest between the insurer and the insured in settlement negotiations and in trial tactics, and gives rise to conflict between the rule allowing jury consideration of the defendant's financial standing and the rule against referring to the defendant's insur-

ance in the presence of the jury. *See McNulty,* 307 F.2d at 441.

We perceive that a conflict of interest between the insurer and the insured regarding settlement or trial tactics is more likely where the insurer does not assume liability for punitive damages, and not vice versa. In *McNulty,* the court pointed to three instances of conflict: first, when the insurer refused an offer of settlement; second, when the insurer did not apprise the insured about punitive damages before trial; and finally, when the insurer conceded liability for compensatory damages. *Id.* However, we see these conflicts as having arisen because the insurer was assuming no liability for punitive damages, not because the punitive damages were covered by insurance. *See id.* at 433.

■ There remains an evidence question to be resolved regarding the admissibility of insurance coverage. On the one hand, evidence of liability insurance is inadmissible to show negligence or wrongful action. SCRA 1986, 11–411. On the other hand, evidence of a defendant's finances is admissible in assessing punitive damages. *Aragon v. General Elec. Credit Corp.,* 89 N.M. 723, 557 P.2d 572 (Ct.App.), *cert. denied,* 90 N.M. 7, 558 P.2d 619 (1976). We hold that punitive damages liability coverage is not an asset which can be used to measure true punishment and that, therefore, it should not be considered by the jury in assessing a defendant's financial standing. *See Michael v. Cole,* 122 Ariz. 450, 452, 595 P.2d 995, 997 (1979). Such evidence could only have the tendency to encourage the jury to discount the limits before assessing damages in accordance with the defendant's financial standing.

■ Therefore, this Court joins the majority of jurisdictions which allow insurance contracts to cover liability for punitive damages.[1] Citizens and their insurers

**1.** *Employers Ins. Co. of Alabama v. Brock,* 233 Ala. 551, 172 So. 671 (1937); *Price v. Hartford Accident and Indem. Co.,* 108 Ariz. 485, 502 P.2d 522 (1972); *Southern Farm Bureau Casualty Co. v. Daniel,* 246 Ark. 849, 440 S.W.2d 582 (1969); *Greenwood Cemetery, Inc. v. Travelers Indem. Co.,* 238 Ga. 313, 232 S.E.2d 910 (1977); *Abbie Uriguen Oldsmobile Buick, Inc. v. United States*

*Fire Ins. Co.,* 95 Idaho 501, 511 P.2d 783 (1973); *City of Cedar Rapids v. Northwestern Nat'l Ins. Co. of Milwaukee,* 304 N.W.2d 228 (Iowa 1981); *Continental Ins. Co. v. Hancock,* 507 S.W.2d 146 (Ky.1974); *Fagot v. Ciravola,* 445 F.Supp. 342 (E.D.La.1978); *First Nat. Bank of St. Mary's v. Fidelity and Deposit Co.,* 283 Md. 228, 389 A.2d 359 (1978); *Anthony v. Frith,* 394 So.2d 867

should have the right to contract for insurance against the possibility of a judicial decision finding that a person's conduct rises above ordinary negligence and justifies punitive damages. If insurance companies market policies which consumers reasonably expect cover all damages, then the insurer should honor that contract. Contracts should be held invalid against public policy only if there is an evil tendency connected with the contract itself, and insurance coverage of punitive damages has not been related in any substantial way to the commission of wrongful acts. *See Harrell v. Travelers Indem. Co.*, 279 Or. 199, 567 P.2d 1013 (1977); *Lazenby v. Universal Underwriters Ins. Co.*, 214 Tenn. 639, 383 S.W.2d 1 (1964).

We reverse the summary judgment entered in favor of General Accident, and remand for further action on the third party complaint in accordance with this opinion.

IT IS SO ORDERED.

DAN SOSA, Senior Justice, concurs.

SCARBOROUGH, C.J., concurs in result only.

(Miss.1981); *First Bank (N.A.)–Billings v. Transamerica Ins. Co.*, 679 P.2d 1217 (Mont.1984); *Hartford Accident & Indem. Co. v. Wolbarst*, 95 N.H. 40, 57 A.2d 151 (1948); *Mazza v. Medical Mut. Ins. Co.*, 311 N.C. 621, 319 S.E.2d 217 (1984); *Harrell v. Travelers Indem. Co.*, 279 Or. 199, 567 P.2d 1013 (1977); *Morrell v. Lalonde*, 45 R.I. 112, 120 A. 435 (1923); *Carroway v. Johnson*, 245 S.C. 200, 139 S.E.2d 908 (1965); *Lazenby v. Universal Underwriters Ins. Co.*, 214 Tenn. 639, 383 S.W.2d 1 (1964); *Dairyland County Mut. Ins. Co. v. Wallgren*, 477 S.W.2d 341 (Tex.Civ.App.1972); *State v. Glens Falls Ins. Co.*, 137 Vt. 313, 404 A.2d 101 (1979); *Hensley v. Erie Ins. Co.*, 168 W.Va. 172, 283 S.E.2d 227 (1981); *Brown v. Maxey*, 124 Wis.2d 426, 369 N.W.2d 677 (1985); *Sinclair Oil Corp. v. Columbia Casualty Co.*, 682 P.2d 975 (Wyo.1984); *contra Ford Motor Co. v. Home Ins. Co.*, 116 Cal.App.3d 374, 172 Cal.Rptr. 59 (1981); *Universal Indem. Ins. Co. v. Tenery*, 96 Colo. 10, 39 P.2d 776 (1934); *Northwestern Nat'l Casualty Co. v. McNulty*, 307 F.2d 432 (5th Cir.1962); *Guardianship of Estate of Smith v. Merchants Mut. Bonding Co.*, 211 Kan. 397, 507 P.2d 189 (1973); *Braley v. Berkshire Mut. Ins. Co.*, 440 A.2d 359 (Me.1982); *Wojciak v. Northern Package Corp.*, 310 N.W.2d 675 (Minn.1981); *Variety Farms, Inc. v. New Jersey Mfrs. Ins. Co.*, 172 N.J.Super. 10, 410 A.2d 696 (1980); *Hartford Accident and Indem. Co. v. Village of Hempstead*, 48 N.Y.2d 218, 422 N.Y. S.2d 47, 397 N.E.2d 737 (1979); *Esmond v. Liscio*, 209 Pa.Super. 200, 224 A.2d 793 (1966).