803 P.2d 664

William **STINBRINK**,
Claimant–Appellant,

v.

**FARMERS INSURANCE COMPANY OF ARIZONA**, Respondent–Appellee.

No. 18253.

Supreme Court of New Mexico.

Nov. 28, 1990.

Rehearing Denied Jan. 21, 1991.

Eaton Law Firm, Roger V. Eaton, Kevin P. Levy, Albuquerque, for claimant-appellant.

Sorenson & Schutte, Randall D. Van Vleck, Katherine Pearson, Albuquerque, for respondent-appellee.

## OPINION

BACA, Justice.

This case is before the court on an appeal from a district court confirmation of an arbitration award. Appellant William Stinbrink was involved in an automobile accident with a Mr. Fullbright, an uninsured motorist whose blood-alcohol content at the time of the accident was .25. Mr. Stinbrink made a claim against his own insurance company, Appellee Farmers, under the uninsured motorist portion of his policy. This claim was arbitrated in compliance with the policy terms. The arbitrators found for Mr. Stinbrink, but concluded that because Farmers' insurance policy specifically excluded liability for punitive damages in uninsured motorists' claims and because the policy mandated that each party bear its own arbitration costs, neither punitive damages nor arbitration costs could be awarded. This award was confirmed by the district court. These two issues occasion Mr. Stinbrink's appeal. We reverse.

The two issues raised by Mr. Stinbrink are actually two branches of the same question; that is, to what extent may an insurance policy set terms that may limit or exclude damages and costs that would otherwise be available under statute? More specifically, is an insurance contract violative of statutory requirements under the uninsured motorists' provision of the New Mexico statutes if it excludes liability for an uninsured's punitive damages even though a claimant may be legally entitled to receive punitive damages from the uninsured tort-feasor? Secondly, may an insurance policy mandate that each party bear its own arbitration costs even though the statute provides that an arbitrator may award costs of the arbitration to the prevailing party? There are two competing policy interests: the public policy behind the uninsured motorist statute which seeks to protect innocent victims of uninsured motorists, and the right of parties to freely contract within the context of an insurance policy.

## THE EXCLUSION FOR PUNITIVE DAMAGES

"[P]ublic policy encourages freedom between competent parties of the right to contract, and requires the enforcement of contracts, unless they clearly contravene some positive law or rule of public morals." *General Elec. Credit Corp. v. Tidenberg,* 78 N.M. 59, 62, 428 P.2d 33, 36 (1967). The contract for insurance between Mr. Stinbrink and Farmers excluded coverage for punitive damages against uninsured motorists. Mr. Stinbrink argues that this clause contravenes statutory law and is therefore void.

NMSA 1978, Section 66–5–301(A) (Repl. Pamp.1989) *requires* that an insurance policy contain uninsured motorist coverage "for the protection of persons insured thereunder who are *legally entitled* to recover damages from owners or operators of uninsured motor vehicles because of bodily injury * * * death * * * or destruction of property." (Emphasis added.) Those damages that a victim of an uninsured tort-feasor might be legally entitled to recover undoubtedly include punitives;

but are they contemplated by this statute? Punitive damages are not specified in the statute. Did the legislature intend that punitive damages be included in the term "legally entitled to recover" found in the mandated coverage of this section? If punitive damages are covered by the statute then their exclusion in an insurance contract would conflict with statutory law.

In *Stewart v. State Farm Mutual Automobile Insurance Co.,* 104 N.M. 744, 746, 726 P.2d 1374, 1376 (1986), we determined that the legislative purpose behind enacting compulsory uninsured motorist coverage is " 'to protect the insured against the financially unresponsible motorist, not to protect the insurance company.' * * * [T]he only condition to protection under the provision is that 'the injured person must be legally entitled to recover damages from the uninsured motorist.' " *Id.* at 746, 726 P.2d at 1376 (quoting *Gantt v. L & G Air Conditioning,* 101 N.M. 208, 213, 680 P.2d 348, 353 (Ct.App.1983)). The court in *Stewart* accordingly concluded that *"under the New Mexico statute, uninsured motorist coverage includes coverage for punitive damages." Stewart,* 104 N.M. at 746, 726 P.2d at 1376 (emphasis added). We have thus determined that punitive damages are as much a part of the potential award under the uninsured motorist statute as damages for bodily injury, and therefore they *cannot be contracted away.*

*Stewart* contains dicta that appear contradictory. The court in *Stewart* determined that the statute includes coverage for punitives but then awarded punitives based on *the language within the policy* that exactly mirrored the statutory language. It continued that "absent an express exclusion in the policy" it would impose liability for punitives on the insurer. This contradiction must be clarified. If the statute is interpreted to include punitive damages within the context of uninsured motorist coverage, an express exclusion in the insurance policy is necessarily void. The dicta in *Stewart* conflict with the law as articulated in that case and is specifically disavowed. *Stewart* states: "State Farm * * * was on notice that such an exclusionary clause might be a determining

factor of coverage. State Farm might have attempted to limit its liability for punitive damages in its policy language; it did not make that effort." *Id.* at 747, 726 P.2d at 1377. Any effort to exclude coverage required by statute by contracting it away is void. " '[E]xclusionary [provisions] in insurance contracts shall be enforced so long as their meaning is clear and *they do not conflict with statutory law.*' " *Chavez v. State Farm Mut. Auto. Ins. Co.*, 87 N.M. 327, 329, 533 P.2d 100, 102 (1975) (quoting *Willey v. Farmers Ins. Group*, 86 N.M. 325, 326, 523 P.2d 1351, 1352 (1974)); *see also Jimenez v. Foundation Reserve Ins. Co.*, 107 N.M. 322, 757 P.2d 792 (1988).

ARBITRATION COSTS

Did the trial court violate statutory provisions by allowing the insurance policy to split the costs of arbitration between the parties? There are three different statutory provisions regarding costs: 1) the general statute regarding costs in civil actions, 2) the New Mexico Arbitration Act which deals with costs in arbitration, and 3) the uninsured motorists' insurance statute which deals specifically with arbitration in the context of uninsured motorists' disputes in the instant case. NMSA 1978, Section 39-3-30, regarding costs in civil actions, states: "In all civil actions or proceedings of any kind, *the party prevailing shall recover his costs against the other party* unless the court orders otherwise for good cause shown." (Emphasis added.) The New Mexico Arbitration Act, NMSA 1978, Section 44-7-10 provides: *"Unless otherwise provided in the agreement to arbitrate,* the arbitrators' expenses and fees * * * shall be paid as provided in the award." (Emphasis added.) Section 66-5-302 of the uninsured motorists' insurance statute reads: "The arbitrator *may award* the costs of arbitration to the prevailing party." (Emphasis added.) A conflict seems to exist between these three statutory provisions. Generally, in civil actions, Section 39-3-30 mandates that costs be awarded to the prevailing party. The New Mexico Arbitration Act, Section 44-7-10, allows parties to contract for allocation of arbitration costs in general arbitration cases. More specifically, under the uninsured motorists' insurance statute, Section 66-5-302, costs of arbitration *may* be awarded to the prevailing party by the arbitrator.

In *Dairyland Insurance Co. v. Rose*, 92 N.M. 527, 591 P.2d 281 (1979), this court dealt with a conflict between the New Mexico Uniform Arbitration Act and the uninsured motorists' statute, and held: "The legislative history of the two acts involved here lends support to the view that the New Mexico Uniform Arbitration Act was intended to supersede the *de novo trial* provision of the uninsured motorist law." *Id.* at 530, 591 P.2d at 284 (emphasis added). On the specific question of whether or not a de novo hearing would be allowed, this court held that the more recent New Mexico Uniform Arbitration Act prohibiting de novo review would prevail. The prohibition of a de novo appeal in the Arbitration Act directly contradicted the uninsured motorists' insurance statute which allowed a de novo review of arbitration. The conflict between the two acts was found to be so repugnant as to be irreconcilable. The court in *Dairyland* relied on two rules of statutory construction: "(1) Repeals by implication are not favored unless necessary to give effect to obvious legislative intent; (2) the enactment of a new and comprehensive law covering the whole subject matter which is inconsistent with and repugnant to the prior law manifests legislative intent to repeal the earlier statute *or so much thereof as may be in conflict with the later one.*" *Id.* at 530, 591 P.2d at 284 (emphasis added).

In this case the uninsured motorists' insurance statute and the New Mexico Arbitration Act are not in such a state of repugnant conflict on the issue of apportionment of arbitration costs. The Arbitration Act merely encompasses the uninsured motorists' insurance statute; it allows the arbitrator to award costs of arbitration to the prevailing party (as does the uninsured motorists' insurance statute) unless the parties contract to award it in some other way. This distinction is not enough to warrant a repeal by implication and does not make the acts irreconcilable.

There is a third rule of statutory construction not mentioned by the court in *Dairyland* which aids in the resolution of the question before us. That is: a statute dealing with a specific subject will be considered an exception to, and given effect over, a more general statute. *In re Rehabilitation of Western Investors Life Ins. Co.*, 100 N.M. 370, 671 P.2d 31 (1983); *City of Alamogordo v. Walker Motor Co.*, 94 N.M. 690, 616 P.2d 403 (1980); *State v. Mirabal*, 108 N.M. 749, 779 P.2d 126 (Ct. App.), *cert. denied*, 108 N.M. 713, 778 P.2d 911 (1989). This is true whether the special statute was passed before, after, or along with the general statute. *See Saiz v. City of Albuquerque*, 82 N.M. 746, 487 P.2d 174 (Ct.App.1971).

New Mexico courts in interpreting various provisions of the uninsured motorists' statute have relied on certain public policy considerations gleaned from the acts of the legislature in implementing this law. There have been attempts to place the insured in the same position he or she would have been in had the tort-feasor had liability insurance. *State Farm Mut. Auto. Ins. v. Maidment*, 107 N.M. 568, 761 P.2d 446 (Ct.App.), *cert. denied*, 107 N.M. 413, 759 P.2d 200 (1988). *See also Gantt v. L & G Air Conditioning*, 101 N.M. 208, 680 P.2d 348 (Ct.App.1983), *cert. quashed*, 101 N.M. 189, 679 P.2d 1287 (1984). If Mr. Fullbright had had liability insurance, Mr. Stinbrink would have been able to bring a civil action against him and would have been able to recover his costs as the prevailing party.

New Mexico policy also encourages arbitration of disputes. *Shaw v. Kuhnel & Assoc.*, 102 N.M. 607, 698 P.2d 880 (1985). Arbitration is encouraged to relieve congestion in the court system, to speed up resolution of disputes, and to make more economical to all parties the resolution of cases. There is also a general principle in New Mexico law that insurance contracts will be construed against the insurance company which prepared the document. *Mountain States Mut. Casualty Co. v. Northeastern N.M. Fair Ass'n*, 84 N.M. 779, 508 P.2d 588 (1973). *E.g., United Nu-*clear Corp. v. Mission Ins. Co.*, 97 N.M. 647, 642 P.2d 1106 (Ct.App.1982). *See State Farm Auto. Ins. Co. v. Kiehne*, 97 N.M. 470, 641 P.2d 501 (1982). In the present case, the insurance contract provides that costs will be shared equally by the parties should the matter go to arbitration. Just as easily, the contract could require the insured to bear seventy-five or eighty percent—or even all—of the costs of arbitration. This would presumably be allowable under Section 44-7-10. If the insurance company under the uninsured motorists' portion of the policy forced the insured to be responsible for all or most of the costs of arbitration regardless of the outcome, this would have a chilling effect on uninsured motorists' claims and on arbitration in general. This result would seem to be incompatible with New Mexico's announced public policies to encourage arbitration and to protect persons from uninsured drivers by placing injured parties in the same or similar position they would have been in had they been dealing with a person with liability insurance. It would also be inconsistent with the public policy of New Mexico to apportion or assess costs against the losing party.

Under the facts of the present case, we remand the question of the amount of costs to the district court for a further remand to the arbitrators to make an appropriate award. The arbitrators have already determined that claimant-appellant is the prevailing party, having found that the uninsured tort-feasor was 100% responsible for the accident. They also found that, if it were possible, punitive damages would be awarded against him.

The judgment is reversed and the cause remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

SOSA, C.J., and RANSOM and WILSON, JJ.

MONTGOMERY, J., concurs in part, dissents in part.

MONTGOMERY, Justice (concurring in part, dissenting in part).

I concur with that portion of the Court's opinion invalidating the clause in the insurance policy that requires costs of arbitration to be borne by the party incurring them; the clause conflicts with the statutory provision authorizing the arbitrator to award costs to the prevailing party. I dissent from the ruling that the policy exclusion for punitive damages violates the statute; the ruling effectuates neither the purpose of the uninsured motorist act nor the policy underlying an award of punitive damages, and it subverts the principle that insurance contracts, no less than other contracts, should be enforced according to their terms unless they contravene the law or public policy.

As the majority says, the question is whether the legislature intended that punitive damages be recoverable from the insurer when it required in Section 66–5–301 that uninsured motorist coverage be afforded to insureds who are "legally entitled" to recover damages from uninsured motorists. This question ought not be answered by looking mechanically at whether or not the insured victim might be legally entitled to recover punitive damages from the tortfeasor; it ought rather to be answered by looking at the purpose of the statute's requirement that uninsured motorist coverage be provided.

It has been said that the purpose of the statute is to place the insured in the same position he would have been in had the tortfeasor had liability insurance. *See, e.g.,* *State Farm Mut. Auto. Ins. Co. v. Maidment,* 107 N.M. 568, 572, 761 P.2d 446, 450 (Ct.App.1988). If Mr. Fullbright had had insurance and if his insurance had excluded liability for punitive damages, Mr. Stinbrink would not have been able to recover punitive damages from the insurer, even though he might have been awarded such damages against the tortfeasor.[1] Under the majority's ruling, Mr. Stinbrink can recover punitive damages from his insurer even though the tortfeasor had no insurance at all. This result seems unnecessary and inequitable.

Of even greater significance is the inconsistency between the majority's ruling and the purpose of awarding punitive damages in the first place. In both *Stewart v. State Farm Mutual Automobile Insurance Co.,* cited in the majority opinion, and *Baker v. Armstrong, supra* note 1, the purpose of punitive-damage recovery was recognized as being punishment of the tortfeasor, not compensation of the victim. *Stewart,* 104 N.M. at 746, 726 P.2d at 1376; *see Baker,* 106 N.M. at 397–98, 744 P.2d at 172–73. In my view, we should not construe the statute to make coverage for punitive damages compulsory, because doing so dilutes the purpose of a punitive-damage award.[2] Imposing punitive damages on the insurer shifts the deterrent effect from the culpable tortfeasor to the innocent insurer and provides a windfall to the insured in the face of the principle that punitive damages are not intended to compensate the plaintiff. *See Baker,* 106 N.M. at 397–98, 744 P.2d at 170–73 (quoting *Northwestern Nat'l Casualty Co. v. McNulty,* 307 F.2d

---

**1.** No decision of which I am aware holds that an insurer cannot exclude liability for punitive damages under a liability insurance policy. Until *Baker v. Armstrong,* 106 N.M. 395, 744 P.2d 170 (1987), the issue was just the opposite: whether public policy would even *permit* coverage for punitive damages; no one argued that the law or public policy *required* such coverage. *Baker* held that public policy did not prohibit an insurer from insuring against punitive-damage liability and that, when an insurance policy was silent on the subject, it would be construed to afford coverage. In dictum, the *Baker* plurality said: "While [the insurer] *could have contracted* to exclude punitive damages, it did not do so by the language it chose to use." 106 N.M. at 396, 744 P.2d at 171 (emphasis added).

**2.** I realize that *Stewart* and *Baker* say that this dilutive effect may not exist because the insurer can always sue the tortfeasor for recovery of the punitive damages and thereby implement the policy of visiting punishment on the party guilty of culpable behavior. However, I believe this notion—that the insurance company will carry out the law's purpose in seeking redress for the tortfeasor's wrongful conduct by suing him or her in subrogation—is largely fictional. Such a suit will occur only in the rare instance when the tortfeasor has sufficient assets to satisfy a punitive-damage award, which the tortfeasor almost never will if he or she lacks insurance coverage.

432, 440 (5th Cir.1962): "[T]here is no point in punishing the insurance company; it has done no wrong.").

It is no answer to this argument to say that the insurance company is only being required to provide the uninsured motorist coverage it contracted to pay—that a separate premium charge was assessed for this coverage and that the insurer agreed to pay "all sums" to which the insured might be legally entitled. In this case the insured and the insurer contracted to *exclude* punitive damages; their *contract* did not contemplate that such damages would be awarded. As for the premium, it compensated the insurer for the risk that an insured would be injured in an accident with an uninsured motorist; that risk was actuarily determined based on factors such as the frequency and amounts of claims. Under the majority's decision the insurer's risk is increased by adding exposure to claims that the parties did not contemplate. The effect presumably will be to cause premiums to rise, since now insurance companies cannot exclude these types of damages even if their policyholders agree. This has the effect, indirectly, of shifting the punitive-damage burden not only from the culpable tortfeasor to the innocent insurer but also from the latter to the premium-paying public, which ultimately must bear the costs of the gross negligence or wilful behavior of tortfeasors like Mr. Fullbright. I would confine an award of damages intended as punishment to the person who merits the punishment.

While it is true that in *Stewart* this Court held that uninsured motorist coverage includes coverage for punitive damages, this holding was issued in a case in which the policy did not expressly exclude coverage for punitive damages, as does the policy in this case. The Court made it clear that it was construing the terms of the *insurance policy* in holding that there was no implied exclusion for punitive damages. *See* 104 N.M. at 747, 726 P.2d at 1377. Just as the Court did later in *Baker*, it ruled that the policy language covered liability for punitive damages and that such coverage was not only not prohibited by public policy, it was consistent with the uninsured motorist statute by responding to the insured's reasonable expectations of coverage and affording coverage for all sums which the insured might be legally entitled to recover.

In the present case, however, the policy expressly excludes such coverage, so there is no argument that the insured's reasonable expectations are being frustrated. Unlike both *Stewart* and *Baker*, the issue in this case does not involve construing the insurance policy; it involves construing the *statute* to determine whether it *requires* coverage for punitive damages. To hold that the statute does so not only dilutes the purpose of awarding punitive damages; it does violence to what was referred to in *Baker* as a "weighty policy consideration": "the right of a person and his or her insurer to freely contract for [and, I submit, against] insurance against an adjudication of [punitive-damage] liability * * *." 106 N.M. at 398, 744 P.2d at 173. Since the majority gives only lip-service to this right and ignores other pertinent policy considerations, I respectfully dissent.