# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: December 4, 2017

**NOS. A-1-CA-35338 & A-1-CA-35821 (Consolidated)**

**FRED LOYA INSURANCE COMPANY,**

Plaintiff/Counter-Defendant-Appellant,

v.

**THOMAS J. SWIECH,**

Defendant/Counter-Plaintiff-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Victor S. Lopez, District Judge**

Craig, Terrill, Hale & Grantham, LLP
Elizabeth G. Hill
Leonard R. Grossman
Andrew B. Curtis
Lubbock, TX

for Appellant

Carter & Valle Law Firm, P.C.
Richard J. Valle
Matthew J. Zamora
Albuquerque, NM

for Appellee

Jarmie & Associates
Mark D. Standridge
Las Cruces, NM

for Amicus Curiae

**OPINION**

**VANZI, Chief Judge.**

{1}     The dispositive issue in these consolidated appeals is whether New Mexico's uninsured/underinsured motorist statute, NMSA 1978, § 66-5-301 (1983) (UM/UIM Act), requires an insurance company to pay punitive damages from the uninsured/underinsured (UM/UIM) bodily injury coverage limits of its insured's automobile insurance policy, where (1) the insured motorist sustained only property damage caused by an uninsured motorist; (2) the insurer paid the full amount of the UM/UIM property damage coverage limits of the policy; and (3) the punitive damages claim arose only from the uninsured motorist's conduct in causing that property damage. We hold that an insurer that has paid the full amount of the policy's UM/UIM property damage coverage limits is not required to pay from the policy's separate and distinct UM/UIM bodily injury coverage limits amounts representing punitive damages arising solely from property damage. Based on this holding, we reverse the district court's contrary ruling and its award of attorney fees to the insured under NMSA 1978, Section 39-2-1 (1977). We also conclude that the district court abused its discretion in denying the insurer's motion to seal confidential mediation communications pursuant to NMSA 1978, Section 44-7B-4 (2007).

# FACTUAL BACKGROUND

{2}   In the early morning hours of June 21, 2013, Defendant/Counter-Plaintiff Thomas J. Swiech was asleep in his apartment when an uninsured motorist, fleeing from police, struck Swiech's unoccupied 2001 Chevrolet Suburban. The Suburban sustained disabling property damage from the collision. No one was in the vehicle at the time of the accident, and no one—including Swiech—sustained any bodily injury.

{3}   Swiech incurred $3,566.24 in property damage to his Suburban and sought UM/UIM property damage coverage from his automobile insurer, Plaintiff/Counter-Defendant Fred Loya Insurance Company (Loya). The declarations page of Swiech's insurance policy with Loya provided the following UM/UIM coverage limits: $25,000 per person/$50,000 per accident for bodily injury and $10,000 for property damage. The policy defines "bodily injury" as "bodily harm, sickness, or disease, including death that results from bodily harm, sickness, or disease." It defines "property damage" as "physical damage to or destruction of a covered vehicle; and . . . physical damage to or destruction of any property owned by an insured person which is contained in the covered vehicle at the time of the accident." Part III of the policy, which specifically pertains to UM/UIM coverage, provides:

> *Subject to the Limits of Liability*, if you pay a premium for [UM/UIM] Motorist Bodily Injury Coverage, we will pay for damages which an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle or underinsured motor vehicle *because of bodily injury*:
>    1. sustained by an insured person;
>    2. caused by accident; and

> 3. arising out of the ownership, maintenance, or use of an uninsured motor vehicle.
>
> . . . .
>
> *Subject to the Limits of Liability*, if you pay a premium for [UM/UIM] Motorist Property Damage Coverage, we will pay for damages which an insured person is entitled to recover from the owner or operator of an uninsured motor vehicle *because of property damage*:
>> 1. caused by accident; and
>> 2. arising out of the ownership, maintenance, or use of an uninsured motor vehicle.

(Emphases added.) The policy, including Part III, is silent as to punitive damages.

{4}    Loya paid Swiech the policy's $10,000 coverage limit for UM/UIM property damage: $3,566.24 in property damage actually incurred plus $6,433.76. Swiech thereafter demanded that punitive damages arising from the property damage be paid from his UM/UIM bodily injury coverage, which Loya denied.[1]

**PROCEDURAL BACKGROUND**

**The Summary Judgment Motions and the District Court's Judgment**

{5}    Following Swiech's demand for payment of punitive damages from his policy's UM/UIM bodily injury coverage, Loya filed a complaint in the district court seeking a declaratory judgment that Swiech was not entitled to any proceeds under the policy

---

[1]Although Loya denied in the district court that the additional $6,433.76 it paid to Swiech was for punitive damages, it asserts on appeal that the $6,433.76 was "paid as a credit toward punitive damages." In light of our holding that Loya fulfilled its obligations to Swiech, regardless of whether the $6,433.76 payment was for compensatory or punitive damages, we need not and do not address the discrepancy.

3

beyond the $10,000 UM/UIM property damage coverage limit Loya had already paid. Swiech counterclaimed, alleging that Loya had breached the insurance contract by failing to pay a "first party coverage claim" and had "wrongfully and unlawfully denied UM/UIM coverage." Swiech also sought a declaratory judgment that, among other things, he was entitled to punitive damages and "to recover the entire UM/UIM policy limits." In other words, Swiech sought to recover in excess of the UM/UIM property damage coverage limit by claiming entitlement to the UM/UIM bodily injury coverage limit, despite the fact that he did not sustain any bodily injury.

{6} Loya moved for summary judgment, arguing that it was entitled to judgment as a matter of law because the $10,000 policy limit for property damage coverage had been exhausted, and "there are no genuine issues of material fact as to whether [Swiech] has suffered any bodily injury damages." Swiech did not dispute any material facts, and he admitted that Loya had paid the $10,000 policy limit for UM/UIM property damage coverage but argued that he was entitled to the $25,000 policy limit for UM/UIM bodily injury coverage because (1) the uninsured motorist's conduct warranted punitive damages, (2) the policy did not preclude him from seeking punitive damages, (3) "punitive damages are separate and distinct damages" from actual damages, and (4) New Mexico law provides that punitive damages are included in UM/UIM coverage.

4

{7}    A month later, Swiech filed his own motion for partial summary judgment on the same grounds asserted in his response to Loya's summary judgment motion, arguing that he was entitled to judgment as a matter of law that he "can request punitive damages from the available $25,000.00 in UM/UIM [bodily injury] coverage." Loya countered that the policy's UM/UIM property damage coverage limit complied with NMSA 1978, Section 66-5-215 (1983) of the Mandatory Financial Responsibility Act (MFRA),, and reiterated that Swiech was not entitled to proceeds under the policy's UM/UIM bodily injury coverage because punitive damages derive from actual damages, and Swiech had sustained only property damage.

{8}    After an unsuccessful attempt at arbitration, Loya and Swiech renewed their summary judgment motions, relying on the same arguments. After holding a hearing, the district court issued orders denying Loya's summary judgment motion and conditionally granting Swiech's motion, ruling that Swiech's "motion to exceed the [policy] limitation if a punitive damage award is obtained above the $10,000 is, conditionally, GRANTED; provided that a trial will be necessary to determine whether punitive damages are recoverable." In so ruling, the district court noted the following points: (1) the policy delineated specific limits but did not address payment of punitive damages; (2) UJI 13-1827 NMRA, the uniform jury instruction for punitive damages, makes "no distinction . . . between the recovery of bodily injury

5

[versus] property damage"—this notwithstanding that the UJI does not, by its terms, apply specifically to liability insurance policies and the Use Note's caution that the instruction merely "provides a general framework"; (3) Loya "did not explain where the policy language clearly and unambiguously limited punitive damages stemming from a property damage claim to $10,000"—this, despite that the policy expressly stated that any loss "because of property damage" is "subject to the limits of liability" for property damage.

{9} Loya unsuccessfully moved for reconsideration based on *Lucero v. Northland Insurance Co.*, 2015-NMSC-011, 346 P.3d 1154, in which our Supreme Court analyzed an insurance contract under generally applicable contract principles.

{10} After a one-day bench trial, the district court entered judgment in favor of Swiech upon findings of fact and conclusions of law. The court ruled that Loya must pay Swiech $20,000 in punitive damages "over and above the $10,000 amount previously paid for property damage-based compensatory damages," based on its conclusion that "assur[ing] the punishment motive of the law is furthered" demanded "utilizing the higher limits under the policy." Many findings focus on the uninsured's conduct while fleeing from police and during his subsequent arrest. Although these matters have no relevance to the issues in dispute, the district court's conclusion that Loya must pay punitive damages for property damage from the policy's separate

6

UM/UIM coverage limits for bodily injury relies heavily on what the court deemed to be the need to send a "societal" message to punish the tortfeasor and "to deter other drivers from engaging in such dangerous and reprehensible conduct" and the court's view that "the punitive damage purpose logically demands access to the greater policy limits."

{11} According to the court, the insuring agreement's statement that if any policy provision "fails to conform with the legal requirements of the state listed on your application [New Mexico] as your residence, the provision shall be deemed amended to conform with such legal requirements," as "allow[ing] recovery of punitive damages under the insuring agreement by operation of law when combined with current New Mexico law on award of punitive damages in this context." The court did not explain how that language justifies ignoring the policy's unambiguous language stating that UM/UIM bodily injury coverage applied only to the "owner or operator of an uninsured motor vehicle or underinsured motor vehicle because of bodily injury" and limiting UM/UIM recovery for property damage to the stated limit of $10,000.

{12} The court's decision also identifies no law requiring an insurer to pay punitive damages from UM/UIM bodily injury coverage where, as here, the insured motorist sustained only property damage; the insurer paid the full amount of the UM/UIM

7

property damage coverage limits; and the punitive damages arise only from the uninsured motorist's conduct in causing property damage. Nor does it acknowledge that cases holding that UM/UIM coverage in New Mexico includes punitive damages, which recognize that punitive damages are awarded to punish the tortfeasor, also make clear that punitive damages are recoverable only for the conduct that caused actual damages, which in this case is conduct causing property damage only. *See Stewart v. State Farm Mut. Auto. Ins. Co.*, 1986-NMSC-073, ¶ 10, 104 N.M. 744, 726 P.2d 1374 (rejecting the argument that the policy language precluded punitive damages because they do not arise "because of bodily injury" as specious "because punitive damages are predicated upon actual damages, and the actual damages were awarded in this case for the conduct which resulted in the insured's bodily injury"); *Farmers Ins. Co. of Ariz. v. Sandoval*, 2011-NMCA-051, ¶ 8, 149 N.M. 654, 253 P.3d 944 (stating that punitive damages "derive from actual damages").

**Attorney Fees**

{13}     Three months after the district court entered its final judgment, Swiech moved for attorney fees and costs, pursuant to Section 39-2-1, on the ground that Loya "acted unreasonably in failing to pay the claim." The court found that Loya "breached its duty of good faith and fair dealing" and awarded Swiech $12,000 in attorney fees pursuant to Section 39-2-1, but denied Swiech's request for costs.

**Settlement Conference and Motion to Seal**

{14}    Before the bench trial, the parties participated in a confidential court-ordered settlement conference. After the conference, Swiech moved for sanctions against Loya, claiming that Loya did not attend the conference in good faith because it only prepared one offer letter for $2,500 and therefore "fail[ed] to engage in meaningful negotiations." The motion was not filed under seal, although it contained information pertaining to the settlement conference, including copies of emails between the parties' attorneys discussing logistical and substantive matters. Loya subsequently filed an unopposed motion to seal, pursuant to Section 44-7B-4. The district court denied Loya's motion to seal and Swiech's motion for sanctions.

**STANDARDS OF REVIEW**

{15}    "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582. We review summary judgment decisions de novo. *Romero v. Philip Morris Inc.*, 2010-NMSC-035, ¶ 7, 148 N.M. 713, 242 P.3d 280. "Although we ordinarily review the whole record in the light most favorable to the party opposing summary judgment, we do not do so where pure questions of law are at issue." *Kreutzer v. Aldo Leopold High Sch.*, ___-NMCA___, ¶ 26, ___ P.3d ___ (No. A-1-CA-35286, Aug. 7, 2017). While an

order denying summary judgment is generally not reviewable after entry of final judgment, *Chavez v. Bd. of Cty. Comm'rs*, 2001-NMCA-065, ¶ 12, 130 N.M. 753, 31 P.3d 1027, we have reviewed such orders after final judgment where the summary judgment motion presents an issue of law, *Chaara v. Lander*, 2002-NMCA-053, ¶ 22, 132 N.M. 175, 45 P.3d 895. In this case, the material facts grounding the parties' summary judgment motions are undisputed, and the only issue presented (as to the court's decisions on summary judgment and after the bench trial) is the legal question whether an insurer that has paid the full amount of the policy's UM/UIM property damage coverage limits is required to pay from the policy's separate UM/UIM bodily injury coverage limits amounts representing punitive damages arising solely from property damage. This is a legal question that we review de novo. *See BAC Home Loans Servicing, LP v. Smith*, 2016-NMCA-025, ¶ 7, 366 P.3d 714.

{16}     A district court's denial of a motion to seal is reviewed for an abuse of discretion. *See State v. Doe*, 1981-NMCA-097, ¶ 14, 96 N.M. 648, 633 P.2d 1246. "An abuse of discretion occurs when a ruling is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case." *Benz v. Town Ctr. Land, LLC*, 2013-NMCA-111, ¶ 11, 314 P.3d 688 (internal quotation marks and citation omitted). However, "even when we review for an abuse of discretion," we review de novo the district court's application of the law to the facts, and "we may

10

characterize as an abuse of discretion a discretionary decision that is premised on a misapprehension of the law." *Harrison v. Bd. of Regents of Univ. of N.M.*, 2013-NMCA-105, ¶ 14, 311 P.3d 1236 (internal quotation marks and citations omitted).

**DISCUSSION**

{17}    Loya challenges the district court's rulings that Swiech was entitled to recover punitive damages from the policy's UM/UIM bodily injury coverage[2] and attorney fees, as well as the court's denial of Loya's motion to seal. We agree with Loya on all issues raised and reverse the district court's rulings otherwise.

**Swiech Cannot Recover Punitive Damages Arising From Conduct Causing Property Damage Under His UM/UIM Policy's Bodily Injury Coverage**

{18}    Punitive damages are "sums awarded in addition to any compensatory or nominal damages, usually as punishment or deterrent levied against a defendant found guilty of particularly aggravated misconduct, coupled with a malicious, reckless or otherwise wrongful state of mind." *Madrid v. Marquez*, 2001-NMCA-087, ¶ 4, 131 N.M. 132, 33 P.3d 683 (internal quotation marks and citation omitted). Our Supreme Court has held that, "under the New Mexico [UM/UIM Act], uninsured motorist coverage includes coverage for punitive damages." *Stewart*, 1986-NMSC-073, ¶ 9; *see also Manzanares v. Allstate Ins. Co.*, 2006-NMCA-104, ¶ 5, 140 N.M.

_____

[2] We thank amici for their interest in this matter and have considered their arguments.

227, 141 P.3d 1281 ("Punitive damages are . . . included within an insured's [UM/]UIM coverage."); *State Farm Mut. Auto. Ins. Co. v. Progressive Specialty Ins. Co.*, 2001-NMCA-101, ¶ 14, 131 N.M. 304, 35 P.3d 309 (noting that the UM/UIM Act includes coverage for punitive damages).

{19} Our Supreme Court has also made clear, however, that punitive damages are predicated upon actual damages and are properly awarded only for the same conduct that caused the actual damages. *See Stewart*, 1986-NMSC-073, ¶ 10 (punitive damages recoverable under policy's UM/UIM coverage for bodily injury "because punitive damages are predicated upon actual damages, and the actual damages were awarded in this case for the conduct which resulted in the insured's bodily injury"); *see Behrens v. Gateway Court, LLC*, 2013-NMCA-097, ¶ 24, 311 P.3d 822 ("[T]he conduct giving rise to the punitive damages claim must be the same conduct for which actual or compensatory damages were allowed." (internal quotation marks and citation omitted)); *see also Baker v. Armstrong*, 1987-NMSC-101, ¶ 4, 106 N.M. 395, 744 P.2d 170 (stating that "actual bodily injury or property damage is a prerequisite to punitive damages, and the punishment must be reasonably related to the injury or damage"). Moreover, even where "punitive damages are appropriate under the [UM/UIM] provision of an insurance policy, . . . the total amount of damages for

12

which [the insurer] can be held liable should not exceed the policy limits" of the coverage provided for the actual damages. *Stewart*, 1986-NMSC-073, ¶ 18.

{20}    In *Stewart*, the actual damages at issue fell within the policy's UM/UIM bodily injury coverage, which was limited to $15,000 under the policy. *Id.* ¶¶ 1, 4, 18. Our Supreme Court held that, under the UM/UIM Act, the insured could recover punitive damages arising from actual bodily injury damages under the policy's UM/UIM coverage for bodily injury. *Id.* ¶ 10. The insured could not, however, recover punitive damages arising from bodily injury in excess of the policy's UM/UIM $15,000 limit for bodily injury coverage because the policy provided this amount of bodily injury coverage in exchange for a specific premium and "[t]o require [the insurer] to pay [the insured] in excess of the policy limit extends coverage beyond the terms of the contract, regardless of the premium paid by the insured." *Id.* ¶ 18. Applying *Stewart* to this case, we conclude that punitive damages are potentially recoverable under Swiech's policy only from, and not exceeding, the UM/UIM property damage coverage limits. *Id.* ¶¶ 4, 10, 18.

{21}    Nothing in the district court's findings and conclusions, or Swiech's arguments persuades us that a different conclusion is warranted. First, the UM/UIM Act itself requires that UM/UIM coverage be provided

13

in minimum limits for bodily injury or death and for injury to or destruction of property as set forth in Section 66-5-215[3] . . . and such higher limits as may be desired by the insured, *but up to the limits of liability specified in bodily injury and property damage liability provisions of the insured's policy*, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles[.]

Section 66-5-301(A) (emphasis added). The New Mexico Administrative Code similarly provides that the insurer's "limit of property damage liability *shall not exceed the amount specified* for unknown motorist/uninsured motorist coverage as stated on the declarations page for all damages in excess of $250 arising out of injury to or destruction of all property of one or more insureds as the result of any one accident." 13.12.3.17(F)(2) NMAC (emphasis added). As discussed, even where punitive damages are appropriate, "any damage award must be within the policy limitations[,]" *Stewart*, 1986-NMSC-073, ¶ 4, and the insurer cannot be liable for punitive damages in excess of the coverage limits for the type of damages actually sustained by the insured. *Id.* ¶¶ 10, 18. Neither the district court nor Swiech cited any law requiring an insurer to do what Swiech sought and the district court ordered here, and we have found none.[4]

---

[3]Section 66-5-215 of the MFRA provides the following minimum limits for UM/UIM coverage: $25,000 per person/$50,000 per accident for bodily injury coverage, and $10,000 for property damage coverage. Section 66-5-215(A)(2), (3).

[4]The district court repeatedly refers to the "higher limits" of the policy. But the policy is clear (as is the UM/UIM Act and the MFRA it incorporates) that the

14

{22}     We are not alone in holding that policy limits for separate and distinct coverages cannot be used interchangeably without regard to terms of the insurance contract. *See, e.g.*, *Holt ex rel. Holt v. Atl. Cas. Ins. Co.*, 539 S.E.2d 345, 347-48 (N.C. Ct. App. 2000) (holding that medical expenses for bodily injury cannot be recovered under policy's property damage coverage); *Napier v. Banks*, 224 N.E.2d 158, 160, 162 (Ohio Ct. App. 1967) (holding that payment of the policy's $25,000 limit for bodily injury coverage exhausted the policy and rejecting the contention that claim for loss of consortium should have been paid from the policy's $10,000 property damage coverage limit); *Va. Farm Bureau Mut. Ins. Co. v. Frazier*, 440 S.E.2d 898, 901-02 (Va. 1994) (concluding that medical expenses resulting from bodily injury cannot be recovered under the policy's property damage coverage); *see also Am. Int'l Bank v. Fid. & Deposit Co.*, 57 Cal. Rptr. 2d 567, 574 (Cal. Ct. App. 1996) ("[W]here the 'occurrence' giving rise to the claim causes only economic loss, the fact that such intangible losses cause the victim to later suffer emotional distress and attendant physical injury cannot be used to convert an uncovered claim for economic loss into a covered claim for bodily injury. The occurrence itself must directly cause the bodily injury, the injury to tangible property, or the loss of use of the property.").

---

coverages for "bodily injury" and "property damages" are separate and distinct coverages. Thus, the policy has no "higher limits."

{23} The Georgia Supreme Court held in a factually similar case that an insured could not recover punitive damages from his policy's bodily injury coverage when he did not sustain any bodily injury and had exhausted the property damage limits of his policy. *Flynn v. Allstate Ins. Co.*, 601 S.E.2d 739, 740-41 (Ga. Ct. App. 2004). There, the insured's property was damaged when a motorist drove his truck into the insured's home, but the insured did not suffer any physical impact or bodily injury. *Id.* at 740. The court framed the issue as whether the insured was "entitled to punitive damages or to any damages under the bodily injury portion of the insurance policy." *Id.* In holding that the insured could not recover under the policy's bodily injury coverage, the court noted that "[n]o personal injury or personal physical impact occurred" and that the insurer had already tendered the policy limits for property damage. *Id.* As in New Mexico, punitive damages in Georgia "are considered 'additional' damages and must attach to either a property damage claim or a personal injury claim." *Id.* In other words, "punitive damages cannot be awarded when there is no entitlement to compensatory damages." *Id.* at 741; *see Baker*, 1987-NMSC-101, ¶ 4 (noting that "[w]ithout bodily injury or property damage, there would be no cause of action" for punitive damages).

{24} We hold, as a matter of law, that if the UM/UIM coverage limit for one kind of loss is exhausted (i.e., property damage) an insured cannot recover additional

16

policy proceeds from the UM/UIM coverage limits for another kind of loss (i.e., bodily injury) when the insured did not suffer that other kind of loss. Accordingly, we reverse the district court's judgment that Swiech could recover punitive damages under his policy's UM/UIM bodily injury coverage when he sustained only UM/UIM property damage and exhausted the coverage limit for UM/UIM property damage. Because we reverse on that issue, there is no basis for the court's award of attorney fees under Section 39-2-1, and so we also reverse the fee award. *See id.* (allowing an insured to recover reasonable attorney fees and costs when the insured has prevailed against an insurer who has not paid a first-party coverage claim).

**The District Court Abused Its Discretion in Denying Loya's Motion to Seal**

{25}   Loya challenges the district court's denial of its motion to seal Swiech's motion for sanctions, which Loya sought pursuant to Section 44-7B-4 because the sanctions motion included confidential communications pertaining to the settlement conference. Although he did not oppose the motion to seal, Swiech argues here that Second Judicial District Local Rule LR2-602(I) authorizes disclosure. We disagree.

{26}   The New Mexico Mediation Procedures Act (Mediation Act) provides, "Except as otherwise provided in the Mediation . . . Act . . . or by applicable judicial court rules, all mediation communications are confidential, and not subject to disclosure and shall not be used as evidence in any proceeding." Section 44-7B-4. The parties

do not dispute whether the emails attached to Swiech's motion for sanctions contained "mediation communications," which NMSA 1978, Section 44-7B-2(B) (2007) defines as communications made "during a mediation [and] made for purposes of considering, conducting, participating in, initiating, continuing or reconvening a mediation." Section 44-7B-2(B). Although Swiech contends that mediation communications must be marked as confidential in order to fall within its ambit, the Mediation Act contains no such requirement.

{27}    NMSA 1978, Section 44-7B-5 (2007) of the Mediation Act provides a list of mediation communications that are not confidential, but there is "no [confidentiality] exception for use to determine whether a party participated in the mediation in good faith." *Carlsbad Hotel Assocs., L.L.C. v. Patterson-UTI Drilling Co.*, 2009-NMCA-005, ¶ 31, 145 N.M. 385, 199 P.3d 288. Swiech does not argue that any of Section 44-7B-5's exceptions apply, but contends that LR2-602(I) is an "applicable judicial court rule[]," *see* § 44-7B-4, that permits disclosure of the confidential mediation communications in this case.

{28}    LR2-602(I) provides:

> Parties shall participate in good faith in settlement conferences. Good faith participation includes but is not limited to sufficiently preparing for the conference and engaging in meaningful negotiations during the conference. On motion of any party or its own motion, the court may award attorney fees and costs for failure to participate in good faith.

18

LR2-602(I) neither addresses the expectation of confidentiality in settlement conferences nor authorizes a party to breach the confidentiality of settlement conferences to prove bad faith. No court has construed LR2-602(I) to provide an exception to Section 44-7B-4, and we see no basis to do so here. We are not persuaded by Swiech's contention that the rule's provision for attorney fees and costs would be meaningless if the moving party did not have an opportunity to prove their bad faith claim. The district court obviously could have decided whether sanctions were warranted if the motion had been filed under seal, consistent with the confidentiality provisions of the Mediation Act. The district court abused its discretion in denying Loya's motion to seal.

**CONCLUSION**

{29}   For the reasons stated above, we reverse.

{30}   **IT IS SO ORDERED.**

_____
                                         **LINDA M. VANZI, Chief Judge**

**WE CONCUR:**

_____
**STEPHEN G. FRENCH, Judge**

_____
**HENRY M. BOHNHOFF, Judge**

19