8 P.3d 166

2000-NMCA-070

**ALLSTATE INSURANCE COMPANY, Plaintiff–Appellant,**

v.

**Antonio PEREA, Defendant–Appellee.**

No. 20,536.

Court of Appeals of New Mexico.

July 11, 2000.

Gordon J. McCulloch, Bradley & McCulloch, P.A., Albuquerque, for Appellant.

Raul A. Lopez, Arnold Padilla, Albuquerque, for Appellee.

*OPINION*

SUTIN, Judge.

{1} Plaintiff Allstate Insurance Company appeals the district court's decision to confirm an arbitration award in favor of Defendant Antonio Perea rather than consider the facts and issues in a de novo district court trial. We reverse.

**FACTS AND PROCEEDINGS**

{2} Defendant Perea was injured in an automobile collision involving a minimally insured driver with $25,000 coverage. That driver's insurer paid Defendant the $25,000 policy limit. Defendant then demanded of his own insurer, Allstate, payment of underinsured motorist benefits. Because Defendant had one Allstate policy covering three separate vehicles, Defendant sought to obligate Allstate to $75,000 under the principle of judicial stacking, whereby a class-one insured is entitled to aggregate uninsured motorists coverages. *See Jaramillo v. Provi-*

*dence Washington Ins. Co.,* 117 N.M. 337, 339 n. 1, 871 P.2d 1343, 1345 n. 1 (1994). The parties arbitrated the issue of the extent of Defendant's damages under an arbitration clause in the policy that included the following language:

> Regardless of the method of arbitration, any award not exceeding the limits of the financial responsibility law of New Mexico will be binding and may be entered as a judgment in a proper court.

> Regardless of the method of arbitration, when any arbitration award exceeds the financial responsibility limits of New Mexico, either party has a right to trial on all issues in a court of competent jurisdiction.

The arbitration panel awarded $52,500 to Defendant. Based on Allstate's view that the $52,500 award exceeded the $25,000 mandatory financial responsibility limit of New Mexico, Allstate filed an action in district court to determine the extent of Defendant's damages in a trial de novo. Defendant filed a motion asking the court to confirm the arbitration award. The district court granted Defendant's motion and confirmed the arbitration award.

{3} The district court specifically concluded that "[t]he 'statutory limit of liability' as used in the Allstate insurance policy is modified by the stacking of the uninsured/underinsured motorist policies and by New Mexico case law and is $75,000." The court concluded, therefore, that under the policy language "Defendant's recovery [of $52,500] in arbitration did not exceed this modified 'statutory limit of liability,' " which required the court to confirm the award rather than consider the facts and issues in a trial de novo. The issue is a question of law and we review it de novo. *See Rummel v. St. Paul Surplus Lines Ins. Co.,* 1997–NMSC–042, ¶ 10, 123 N.M. 767, 945 P.2d 985.

## DISCUSSION

{4} The principal issue is straightforward: Do the phrases "the limits of the financial responsibility law of New Mexico" and "financial responsibility limits of New Mexico" in the arbitration clause in the Allstate policy mean solely the $25,000 mandatory amount for bodily injury required in the New Mexico Mandatory Financial Responsibility Act,

NMSA 1978, §§ 66–5–201 to –239 (1978, as amended through 1999), or do they mean the total of three $25,000 uninsured motorists coverages based on the principle of judicial stacking?

{5} We first discuss the applicable law, which consists of the Mandatory Financial Responsibility Act, the Uninsured Motorists' Insurance statute, the New Mexico Uniform Arbitration Act, our case law on judicial stacking, and an instructive New Mexico case regarding a very similar arbitration provision. Following a discussion of the applicable law, we discuss the merits of Allstate's appeal.

### A. *The Applicable Law*

{6} The Mandatory Financial Responsibility Act is contained in Part 3 ("Financial Responsibility") of Article 5 of the Motor Vehicle Code and requires New Mexico residents "who own and operate motor vehicles" (referred to hereafter as "owners") to carry a specified amount of liability insurance or otherwise provide evidence of financial responsibility. Sections 66–5–201.1, –205, and –208. When insurance is the form of proof of financial responsibility, those owners must obtain per-person-liability coverage of $25,000 and higher or other amounts under other circumstances not pertinent here. *See* § 66–5–208.

{7} Coverage for uninsured and underinsured motorists (referred to in this opinion as "uninsured" motorists coverage) is contained in Part 4 ("Uninsured Motorists' Insurance") of Article 5 of the Motor Vehicle Code. *See* NMSA 1978, § 66–5–301 (1978, as amended through 1983). Uninsured motorists insurance must be made available by liability insurers to their insureds. *See id.*

{8} Specifically, unless rejected by the insured after offered by the insurer, insurers are required under Section 66–5–301 to include uninsured motorists coverage:

> in minimum limits for bodily injury or death and for injury to or destruction of property as set forth in Section 66–5–215 NMSA 1978 and such higher limits as may be desired by the insured, but up to the limits of liability specified in bodily injury

and property damage liability provisions of the insured's policy. . . .

Section 66–5–301. Section 66–5–215, which is in the Mandatory Financial Responsibility Act, sets out among other subparts that the sum of $25,000 will be sufficient to satisfy the requirements of the Mandatory Financial Responsibility Act when that amount "has been credited upon any judgment rendered in excess of that amount because of bodily injury to or death of one person as a result of any one accident." Thus, the interplay between the Uninsured Motorists' Insurance statute and the Mandatory Financial Responsibility Act ties the coverages to be made available to an insured under the Uninsured Motorists' Insurance law to those amounts ranging between $25,000 and any higher amount of liability insurance the insured obtains. *See* §§ 66–5–208, –301.

{9} As used in the Motor Vehicle Code, NMSA 1978, §§ 66–1–1 to 66–8–141, excluding 66–7–102.1 (1978, as amended through 1999), and therefore as used in the Mandatory Financial Responsibility Act, the term "financial responsibility" is defined in terms of liability of the insured resulting from traffic accidents. "Financial responsibility" is defined as:

> the ability to respond in damages for liability resulting from traffic accidents arising out of the ownership, maintenance or use of a motor vehicle of a type subject to registration under the laws of New Mexico, in amounts not than specified in the Mandatory Financial Responsibility Act [66–5–201 to 66–5–239 NMSA 1978] or having in effect a motor vehicle insurance policy. 'Financial responsibility' includes a motor vehicle insurance policy, a surety bond or evidence of a sufficient cash deposit with the state treasurer.

Section 66–1–4.6(B). The words "financial responsibility" do not appear in the Uninsured Motorists' Insurance statute. While all owners are required under the Mandatory Financial Responsibility Act to prove their financial responsibility, no owner or insured is required under Section 66–5–301 to carry uninsured motorists coverage.

{10} The purpose of mandatory liability insurance under the Mandatory Finan-

cial Responsibility Act is to require an owner to be financially responsible in order to protect others who are innocent victims of automobile accidents caused by owners of motor vehicles. *See Allstate Ins. Co. v. Jensen,* 109 N.M. 584, 587, 788 P.2d 340, 343 (1990). The purpose of uninsured motorists coverage, on the other hand, is to protect that owner from others who are uninsured. *See Sandoval v. Valdez,* 91 N.M. 705, 708, 580 P.2d 131, 134 (Ct.App.1978).

{11} The doctrine of judicial stacking in New Mexico case law relates and applies solely to uninsured motorists coverage. The doctrine evolved in New Mexico based on a court-adopted policy "to ensure that the insured will receive the benefit of what he or she has paid for and that people concerned about the dangers of uninsured motorists will be compensated to the full extent of the insurance purchased for their protection." *Rodriguez v. Windsor Ins. Co.,* 118 N.M. 127, 130–31, 879 P.2d 759, 762–63 (1994). Allstate concedes that in this case Defendant could stack his uninsured motorists coverages.

{12} The New Mexico Uniform Arbitration Act recognizes the validity of written contracts to arbitrate. *See* NMSA 1978, §§ 44–7–1 to –22 (1971). Allstate seeks relief here based on Section 44–7–12(A)(5). Section 44–7–12(A) permits a court to vacate an arbitration award where:

> (5) there was no arbitration agreement and the issue was not adversely determined in proceedings under Section 2 [44–7–2 NMSA 1978] and the party did not participate in the arbitration hearing without raising the objection. The fact that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award.

This section together with an arbitration clause similar to the one at issue in the present case were interpreted in *Bruch v. CNA Ins. Co.,* 117 N.M. 211, 870 P.2d 749 (1994), which, according to Allstate, "provide[s] the analytical framework for this case:"

{13} In *Bruch,* a CNA policy clause read:

A decision agreed to by ... the ... arbitrators will be binding as to ... [t]he amount of damages. This applies only if the amount does not exceed the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which "your covered auto" is principally garaged. If the amount exceeds that limit, either party may demand the right to a trial.

*Id.* at 212, 870 P.2d at 750. The arbitrators awarded $90,000 to Bruch, more than three times the mandatory $25,000 per-person amount under the Mandatory Financial Responsibility Act. *See id.* Bruch filed a motion in district court to confirm the award. *See id.* CNA, however, demanded a trial de novo based on the language of the clause permitting either party to demand the right to a trial if an arbitration award exceeded the mandatory amount under New Mexico's financial responsibility law. *See id.* The district court granted CNA's right to a trial therefore vacating the arbitration award. *See id.*

{14} The Supreme Court in *Bruch* held that the district court properly granted CNA's motion for a new trial, finding the CNA arbitration clause neither repugnant to public policy nor ambiguous and that the trial court had the authority to vacate the award because the parties mutually accepted this enforceable clause in the policy. *See id.* at 213, 870 P.2d at 751. Underlying its holdings, our Supreme Court determined that Section 44–7–12(A)(5) gave the trial court authority to vacate the arbitration award if there was no arbitration agreement, the issue regarding the existence of an agreement was not adversely determined in prior proceedings, and the party opposing the award did not participate in the arbitration without objecting. *See Bruch,* 117 N.M. at 213, 870 P.2d at 751. The Court then concluded that "[t]he plain language of the contract supports CNA's contention that the parties did not have an agreement, and the record supports CNA's contention that there was no adverse determination." *Id.*

{15} Specifically regarding the clause in question in *Bruch,* the Supreme Court stated "The minimum limit for mandatory bodily injury liability insurance in New Mexico is $25,000, *see* NMSA 1978, §§ 66–5–215 & –301 (Repl.Pamp.1989); *accord* §§ 66–5–205 & –208," *Bruch,* 117 N.M. at 212, 870 P.2d at 750, and that CNA appeared to contemplate "invoking the provision that allowed for a trial de novo if the award exceeded $25,000." *Id.* at 214, 870 P.2d at 752.

{16} *Bruch* does not directly answer the question whether stacking principles are to be invoked in determining the amount intended by the words in the policy clause at issue, referred to hereafter as "financial responsibility limits." We believe, however, that *Bruch* is instructive and provides analytic framework for this case.

**B.** *The Doctrine of Judicial Stacking Cannot be Borrowed in This Case to Decide the Issue*

{17} In the present case, the district court determined that the arbitration clause language at issue did not violate public policy, and that "Allstate properly preserved the right to appeal by notifying the arbitrators and Perea prior to commencement of the arbitration." Defendant does not attack these determinations. Further, the issue regarding whether an agreement to arbitrate existed was not adversely determined in the arbitration proceeding. As a result, the only *Bruch* factor left for consideration is whether an arbitration agreement existed under which Allstate could be bound by an arbitration award in excess of $25,000 and this issue turns on whether "financial responsibility limits" means judicially stacked $25,000 uninsured motorists coverages or the single $25,000 mandatory amount in Section 66–5–208.

{18} As noted earlier, the district court held that the "statutory limit of liability" was modified by the judicial stacking doctrine. Following the court's word usage, Defendant argues that "statutory limit of liability" is $75,000 as a result of stacking uninsured motorists coverages. Of course, if "financial responsibility limits" in the policy means stacked uninsured motorists coverages, the arbitrators' award of $52,500 does not exceed the "financial responsibility limits," the arbitration award is binding, and neither party is

entitled to a de novo trial in district court. But we do not interpret the language in this manner. We hold that the policy contract language "financial responsibility limits" plainly means the applicable single amount stated in Section 66–5–208(A).

{19} The words "financial responsibility" defined in the Motor Vehicle Code are the guts of the Mandatory Financial Responsibility Act. The provision in a motor vehicle liability insurance policy containing the words "financial responsibility limits of New Mexico" and the "limits of the financial responsibility law in New Mexico" must be considered, without evidence of an intent or expectation to the contrary, to incorporate the definition of "financial responsibility" in the Motor Vehicle Code and to incorporate the applicable provisions of the Mandatory Financial Responsibility Act. *See State ex rel. Udall v. Colonial Penn Ins. Co.*, 112 N.M. 123, 130, 812 P.2d 777, 784 (1991) ("A contract incorporates the relevant law, whether or not it is referred to in the agreement.").

{20} No analysis or statutory interpretation in our Supreme Court's judicial stacking cases provides us with any tool with which we can either rationally borrow the stacking doctrine for use in the context here or reasonably construe "financial responsibility limits" in the policy to mean the stacking of uninsured motorists coverages. *See, e.g., Rodriguez*, 118 N.M. at 127, 879 P.2d at 759; *Jaramillo*, 117 N.M. at 337, 871 P.2d at 1343; *Lopez v. Foundation Reserve Ins. Co.*, 98 N.M. 166, 646 P.2d 1230 (1982). Nor do we find any basis on which to "modify," as did the trial court, the language of the arbitration clause. To do so would, in our opinion, alter the plain wording and meaning of the clause. *See Casias v. Dairyland Ins. Co.*, 1999–NMCA–046, ¶ 11, 126 N.M. 772, 975 P.2d 385.

{21} Furthermore, we are aware of no policy reason, and Defendant provides us with none, that gives us reason to apply the judicial stacking doctrine in construing the clause at issue. Application of the judicial stacking doctrine here simply makes the arbitration award binding requiring the district court to confirm that award rather than try the issues de novo. While a second chance through de novo trial may not seem fair to an insured under certain circumstances, our Supreme Court has left little room for complaint, for it held a very similar agreement is neither against public policy nor ambiguous. *See Bruch*, 117 N.M. at 213, 870 P.2d at 751.

{22} Finally, we note that Section 66–5–303 of the Uninsured Motorists' Insurance statute, enacted in 1969, permits any party aggrieved by an arbitrator's award to appeal that award to the district court de novo. The case of *Dairyland Insurance Co. v. Rose*, 92 N.M. 527, 591 P.2d 281 (1979), states, however, that the Uniform Arbitration Act, enacted in 1971, was intended to supercede the de novo provision in Section 66–5–303 in circumstances in which the insured and insurer agree to binding arbitration. *See Rose*, 92 N.M. at 530–31, 591 P.2d at 284–85. Yet, the Uniform Arbitration Act makes provisions in written contracts to submit a controversy to arbitration "valid, enforceable and irrevocable," *see* § 44–7–1, and nothing in the Uniform Arbitration Act forbids parties to a contract to agree that arbitration is binding under some circumstances and not binding under other circumstances as in this case. *Bruch* reinforces that point. Therefore, to the extent that, pursuant to contract, arbitration is not binding, there exists no arbitration agreement to be bound by an arbitrator's award, and, therefore, a party with a contractual right to an appeal de novo, as well as an aggrieved party under Section 66–5–303, has a right to seek a de novo trial in district court. In fact, in the case before us, were Defendant to have been awarded damages of only $26,000 in the arbitration, rather than $52,500, he very well may have been the one seeking a de novo trial under the contract and under Section 66–5–303 in order to seek a greater damages recovery in district court.

## CONCLUSION

{23} We reverse and remand to the district court to try de novo the extent of Defendant's damages.

{24} **IT IS SO ORDERED.**

PICKARD, C.J., and ELLINGTON, J., concur.