2001-NMCA-101

35 P.3d 309

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,**
Petitioner–Appellee,

v.

**PROGRESSIVE SPECIALTY INSURANCE COMPANY,**
Respondent–Appellant,

and

**Kimberly A. Ward, Defendant,**

and

**Starla Whitaker Johnson, Real Party In Interest.**

No. 21,978.

Court of Appeals of New Mexico.

Oct. 9, 2001.

Terry R. Guebert, Don Bruckner, Guebert, Bruckner & Bootes, P.C., Albuquerque, NM, for Appellee.

Daniel J. O'Brien, Lawrence M. Glenn, Daniel J. O'Brien & Associates, P.C., Albuquerque, NM, for Appellant.

Michael R. Huffaker, Booth & Huffaker, Farmington, NM, for Real Party In Interest.

## OPINION

BOSSON, Chief Judge.

{1} This appeal addresses a question left unanswered by prior appellate decisions as to whether New Mexico's mandatory liability insurance law requires coverage for punitive damages. We hold that New Mexico law does not require such coverage and that an insurer may contractually exclude punitive damages from its liability policy. The district court having ruled to the contrary, we reverse.

## BACKGROUND

{2} Starla Johnson and Kimberly Ward were involved in an automobile accident. Johnson made a demand upon Ward and her liability insurer, Progressive Insurance Company (Progressive), to settle for policy limits ($25,000), which included her claim for punitive damages. Progressive advised Johnson that Ward's liability policy had an exclusion for punitive damages, and therefore, Progressive would not include punitive damages in its settlement evaluation. Ultimately, the parties agreed to settle the compensatory damage portion of Johnson's claim for $18,500, and Progressive continued to refuse any payment for punitive damages. Johnson then advised her own uninsured/underinsured motorist (UM) carrier, State Farm Mutual Automobile Insurance Company (State Farm), of her intent to file a UM claim for the punitive damages that had been omitted from her settlement with Progressive. State Farm agreed to settle Johnson's UM claim and paid Johnson $18,500 in compensatory damages and $7,500 in punitive damages for a total of $26,000.

{3} Following payment to Johnson, State Farm filed a declaratory judgment action against Progressive, in which State Farm asked the district court to (1) void Progressive's punitive damage exclusion in Ward's liability policy because it was contrary to state statute, and (2) order Progressive to pay its policy limits to State Farm. The district court agreed with State Farm that Progressive's punitive damage exclusion vio-

lated state law and entered summary judgment against Progressive for $25,000. In this appeal, Progressive contends that it is only liable for the compensatory damage portion of the settlement, $18,500, and that its punitive damage exclusion should be enforced under New Mexico law.

## DISCUSSION

{4} In its effort to void Progressive's punitive damage exclusion, State Farm relies primarily on the case of *Stinbrink v. Farmers Ins. Co.*, 111 N.M. 179, 803 P.2d 664 (1990). In that opinion, our Supreme Court held that the Uninsured Motorists' Insurance Act (UM Act), NMSA 1978, § 66–5–301 (1983), required New Mexico UM insurers to include coverage for punitive damages within their UM policies. *Stinbrink*, 111 N.M. at 180–81, 803 P.2d at 665–66. The Court's holding invalidated punitive damage exclusions in UM coverage. *See id.* at 181, 803 P.2d at 666; *cf. Stewart v. State Farm Mut. Auto. Ins. Co.*, 104 N.M. 744, 747, 726 P.2d 1374, 1377 (1986) (dicta suggesting that UM coverage for punitive damages could be excluded by express language in UM policy; subsequently "disavowed" in *Stinbrink*, 111 N.M. at 180, 803 P.2d at 665). The rationale for the *Stinbrink* decision was that specific words in the UM Act, requiring coverage "for the protection of persons insured thereunder who are legally entitled to recover damages," were meant to include punitive damages to the extent a victim is legally entitled to recover them. *Id.* at 180, 803 P.2d at 665. This rationale fit within the purpose of the UM Act to empower potential victims to protect against serious or catastrophic financial hardship. *Stinbrink* did not address punitive damage exclusions in liability policies.

{5} The holding in *Stinbrink* requires State Farm in this instance to include punitive damages in Johnson's UM coverage. Because Ward's liability policy with Progressive excluded punitive damages, Ward became "uninsured" or "underinsured" to that extent, causing State Farm to indemnify Johnson for her punitive damage claim. State Farm can recoup its UM payment for punitive damages if it can void Progressive's exclusion.

{6} The parties do not claim that Progressive's punitive damage exclusion was somehow ambiguous or unclear. Thus, this appeal presents a clear question of law: whether the rationale of *Stinbrink* should be extended as a matter of statutory law to require punitive damage coverage in liability policies, regardless of whether the parties have contractually agreed to exclude liability for those very damages.

{7} While acknowledging the holding in *Stinbrink*, Progressive points to differences between UM insurance and liability insurance. Progressive places particular emphasis on the separate statutes that control these two kinds of insurance. Whereas UM insurance is governed by the UM Act, which the Court construed in *Stinbrink*, liability insurance is controlled by the New Mexico Mandatory Financial Responsibility Act (MFRA), NMSA 1978, §§ 66–5–201 to –239 (as amended through 1999), which was not at issue or even discussed in *Stinbrink*. Progressive emphasizes that no New Mexico appellate court has ever construed the MFRA to require punitive damage coverage in liability insurance policies. We explore the differences between the two statutes to determine whether the rationale of *Stinbrink* should be extended to liability insurance.

{8} The MFRA attempts to protect the motoring public by requiring drivers to demonstrate a minimal amount of financial responsibility as a condition for driving an automobile in this state. *See Allstate Ins. Co. v. Perea*, 2000–NMCA–070, ¶¶ 6–16, 129 N.M. 364, 8 P.3d 166. A driver demonstrates financial responsibility under the MFRA by one of three methods: a liability insurance policy, a surety bond, or a cash deposit with the State Treasurer. Section 66–5–208. The liability insurance policy must provide at least $25,000 coverage for bodily injury of one person in any one accident, at least $50,000 for two or more persons in any one accident, and at least $10,000 for property damage in any one accident. *Id.* As an alternative to liability insurance, a driver may elect to post a surety bond or a cash deposit in the amount of $60,000 to cover these same contingencies. Sections 66–5–218, –225, –226. All three alternatives are designed to

ameliorate the "catastrophic financial hardship," § 66–5–201.1, that can befall the "innocent victims of automobile accidents," *Perea*, 129 N.M. 364, 8 P.3d 166, 2000–NMCA–070, ¶ 10.

{9} On the surface, the UM Act shares much of the same general purpose. Recognizing the plethora of uninsured drivers in New Mexico, the UM Act requires insurers to offer UM coverage to all New Mexico drivers. *See* § 66–5–301; *Perea*, 129 N.M. 364, 8 P.3d 166, 2000–NMCA–070, ¶ 10. By empowering the potential victim to purchase UM insurance, the UM Act offers protection to the motoring public from the same financial consequences of automobile accidents. In one sense, then, these statutes are like two sides of the same coin: one focuses on the tortfeasor, the other on the victim.

{10} Beyond similar goals, however, the statutes appear to differ markedly in their approaches. The UM Act aims high but does not mandate prudence. A prudent driver who wants UM coverage, and can afford it, need not suffer serious financial consequences from a culpable, uninsured motorist. The more liability insurance a driver purchases, the more the UM Act requires insurers to make available in UM coverage. Section 66–5–301. The only limiting factor would appear to be how much the driver wants to pay. *See Britt v. Phoenix Indem. Ins. Co.*, 120 N.M. 813, 816, 907 P.2d 994, 997 (1995) (UM insurance includes coverage for damages caused by intentional acts of an uninsured motorist). The UM Act places the responsibility for obtaining adequate UM insurance upon the citizen seeking protection.

{11} In contrast with the UM Act, the MFRA is a mandatory, but minimal act, modest in its aim and reach. It applies to all drivers without exception or waiver but requires only a minimal amount of coverage, in an attempt to avoid "catastrophic financial hardship." Section 66–5–201.1.

{12} Cost appears to be a factor. The legislature makes no pretense of mandating comprehensive liability coverage; the cost to both citizen and insurer would likely be prohibitive. Instead, the legislature appears to have settled upon a compromise. In the interest of achieving the broadest possible coverage, the statute limits mandatory insurance to an amount and scope likely to be affordable.

{13} Even the stated aim of the MFRA, avoiding "catastrophic financial hardship," demonstrates a minimalist approach. *See* § 66–5–201.1. Contrary to the UM Act, the aim of the MFRA is not to offer the opportunity to insure fully against a victim's loss by putting the victim in the same position as if the culpable motorist had adequate liability insurance. The MFRA only mitigates the financial hardship by not leaving the victim penniless. It is self-evident that "financial hardship" occurs when compensatory damages, such as medical bills and lost wages, are left unsatisfied. "Financial hardship," whether catastrophic or otherwise, is far less evident from unrequited punitive damages. *See Weidler v. Big J Enters., Inc.*, 1998–NMCA–021, ¶ 53, 124 N.M. 591, 953 P.2d 1089 (describing punitive damages as "a windfall conferred upon an otherwise fully compensated plaintiff").

{14} The difference between the two statutes is also reflected in certain language of the UM Act, relied upon by our Supreme Court in *Stinbrink*, but not found in the MFRA. The UM Act requires that an insurance policy contain UM coverage "for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury." Section 66–5–301(A). As interpreted by our Supreme Court, "[t]hose damages that a victim of an uninsured tort-feasor might be legally entitled to recover undoubtedly include punitives." *Stinbrink*, 111 N.M. at 180, 803 P.2d at 665. In a state like New Mexico, where a driver may contract for liability insurance to include punitive damages, the theory behind the UM Act puts the victim in the same position as if the culpable motorist had actually purchased coverage for "punitives." *Baker v. Armstrong*, 106 N.M. 395, 398–99, 744 P.2d 170, 173–74 (1987) (holding that New Mexico's public policy does not preclude insuring against punitive damages). However, the MFRA contains no such language requiring liability coverage to the extent the victim may be "legally entitled to recover."

{15} In light of the differences between these two statutes and the compromise seemingly struck by our legislature in requiring a minimum amount of financial responsibility of all drivers, we are reluctant to expand the reach of the MFRA beyond its apparent scope. Almost fourteen years ago, our Supreme Court debated whether public policy would even *permit* liability insurance to cover punitive damages. *Id.* at 397, 744 P.2d at 172. It was assumed at the time that liability insurers could not be *obligated* to insure against punitive damages, and that a liability policy could exclude punitive damages if done so in a clear and unambiguous manner. *See id.* at 396, 744 P.2d at 171 (noting in dictum that "[w]hile [the liability insurer] could have contracted to exclude punitive damages, it did not do so by the language it chose to use"); *Rummel v. St. Paul Surplus Lines Ins. Co.*, 1997–NMSC–042, ¶ 16, 123 N.M. 767, 945 P.2d 985 (analyzing whether under *Baker* the liability insurer "unambiguously adopts a punitive damages exclusion" in a non-automobile liability policy).

{16} Justice Montgomery's dissent in *Stinbrink* reemphasized the point that New Mexico law has never compelled liability insurers to include punitive damages. 111 N.M. at 183 n. 1, 803 P.2d at 668 n. 1 (Montgomery, J., concurring in part, dissenting in part) ("No decision of which I am aware holds that an insurer cannot exclude liability for punitive damages under a liability insurance policy."). That understanding about New Mexico law is consistent with appellate decisions in comparable jurisdictions. *See, e.g., Ross Neely Sys., Inc. v. Occidental Fire & Cas. Co.*, 196 F.3d 1347, 1351 (11th Cir.1999) (punitive damage exclusion in automobile liability policy did not violate Alabama law or public policy); *Cassel v. Schacht*, 140 Ariz. 495, 683 P.2d 294, 295 (1984) (en banc) (holding that an Arizona statute similar to the MFRA did not compel liability coverage for punitive damages in the face of a contractual exclusion); *Taylor v. Lumar*, 612 So.2d 798, 800 (La.Ct.App.1992) (holding that Louisiana compulsory liability insurance law did not compel coverage for punitive damages if excluded in policy). State Farm has not referred us to any contrary appellate decision that would support its interpretation of the

MFRA, and we have no reason to believe that any such decision exists.

{17} The MFRA has remained largely intact since *Baker* and *Stinbrink,* as has the UM Act. *See generally* 1998 N.M. Laws, ch. 34 (changing provisions of the MFRA not relevant to this issue). In the intervening years, the legislature has not amended the MFRA to require punitive damages coverage, despite being on notice since *Baker* that we would not likely interpret the existing MFRA to require punitive damages coverage by liability insurers. Although we acknowledge that "[l]egislative silence is at best a tenuous guide to determining legislative intent," *Swink v. Fingado*, 115 N.M. 275, 283, 850 P.2d 978, 986 (1993), we are confident that our interpretation of the MFRA is not inconsistent with legislative goals in this area.

{18} Since *Stinbrink* was authored ten years ago, the way has been clear for insureds to obtain a more adequate, if not full, protection that includes punitive damages by purchasing adequate UM coverage. Responsibility has been placed upon each driver to act pro-actively instead of upon the liability carrier to expand coverage. A kind of equilibrium has been reached between the scope of the UM Act, as expanded in *Stinbrink,* and the scope of the MFRA, which we have no reason to disrupt.

**CONCLUSION**

{19} We reverse the declaratory judgment entered in favor of State Farm, and remand this case to the district court for further proceedings consistent with this opinion.

{20} **IT IS SO ORDERED.**

WE CONCUR: A. JOSEPH ALARID, Judge, and JONATHAN B. SUTIN, Judge.