2002-NMCA-001

38 P.3d 187

**Frieda PADILLA, Plaintiff–Appellant,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant–Appellee.**

**No. 21,222.**

Court of Appeals of New Mexico.

Nov. 16, 2001.

Certiorari Granted, No. 27,258, Jan. 7, 2002.

Dennis P. Murphy, Montoya, Murphy & Garcia, LLP, Santa Fe, NM, for Appellant.

Katherine W. Hall, Miller, Stratvert & Torgerson, P.A., Santa Fe, NM, for Appellee.

## OPINION

ALARID, Judge.

{1} This case presents the issue of whether the public policy of New Mexico precludes the enforcement of an "escape hatch" arbitration provision found in an uninsured motorist endorsement. The district court viewed the Supreme Court's decision in *Bruch v. CNA Ins. Co.*, 117 N.M. 211, 213, 870 P.2d 749, 751 (1994), as controlling; and, applying *Bruch,* upheld the provision. We find *Bruch* to be distinguishable. We conclude that on the facts of this case the public policies underlying the uninsured motorist statute and the Uniform Arbitration Act collectively outweigh the public policy favoring freedom of contract; accordingly, we hold that the escape hatch arbitration provision at issue is unenforceable.

## BACKGROUND

{2} Plaintiff Frieda Padilla, (Padilla) is insured under four automobile insurance policies issued by Defendant, State Farm Mutual Automobile Insurance Company (State Farm). Padilla was injured in an automobile accident on April 26, 1996. Padilla sued the tortfeasor. With State Farm's consent, Padilla settled the suit against the tortfeasor for $25,000, the limits of the tortfeasor's liability policy. Padilla then filed a claim under her under-insured motorist policies.

{3} Padilla's policies with State Farm covered four vehicles and provided uninsured/under-insured motorist coverage of $25,000 per person, $50,000 per collision.

Padilla paid separate premiums for each vehicle for uninsured/under-insured motorist coverage. Padilla sought $70,000 in underinsured motorist benefits from State Farm. Padilla calculated the $70,000 figure by stacking the four $25,000 coverages and then setting off the $25,000 recovered from the tortfeasor and the $5,000 in medical benefits paid by State Farm.

{4} The uninsured motorist endorsement to State Farm's policy contains the following arbitration clause:

> If there is no agreement [as to the insured's entitlement to damages and the amount of damages], these questions shall be decided by arbitration upon written request of the insured or us. Each party shall select a competent and impartial arbitrator. These two shall select a third one.... The written decision of any two arbitrators shall be binding on each party *when the amount of an award for damages does not exceed the limits of the Financial Responsibility law of New Mexico. When any award for damages exceeds these limits, either party has a right to trial on all issues in the proper court.*

(Emphasis in original omitted; emphasis added).

{5} Padilla filed a complaint in the Santa Fe County District Court seeking a declaration that the arbitration clause in State Farm's policy is unenforceable to the extent it provides for non-binding arbitration of awards in excess of the minimum statutory limits of uninsured/under-insured coverage. Padilla asserted that State Farm's arbitration clause conflicted with the following arbitration clause promulgated by the superintendent of insurance.

> **Arbitration.** If any person making a claim [under this endorsement] and the company do not agree that [the] person is legally entitled to recover damages from the owner or operator of an uninsured motor vehicle ... or do not agree as to the amount payable [under the endorsement], then each party shall, upon written demand of either, select a competent and disinterested arbitrator. The two arbitrators so named shall select a third arbitrator.... The arbitrators shall then hear

and determine the question or questions so in dispute, and the decision in writing of any two arbitrators *shall be binding upon the insured and the company.*

13 NMAC 12.3.17.8.1 (1997) (emphasis added). In addition to declaratory relief, Padilla requested that her policies be reformed to provide for binding arbitration.

{6} Padilla and State Farm filed crossmotions for summary judgment. State Farm argued that, in *Bruch*, the Supreme Court had validated the type of arbitration clause contained in State Farm's policy. Padilla distinguished *Bruch* on the grounds that the effect of the superintendent's mandatory binding arbitration clause had not been briefed in *Bruch*. Padilla also argued that State Farm's arbitration clause conflicted with a provision of the Unfair Claims Practices Act, NMSA 1978, § 59A–16–20(K) (1997). Padilla argued that this issue also had not been briefed in *Bruch*.

{7} The district court denied Padilla's motion and granted summary judgment in favor of State Farm. The district court explained that it felt itself bound by *Bruch:*

> Our Supreme Court has already had occasion to pass upon the validity of an identical provision in the matter of *Bruch v. CNA,* 117 N.M. 211, 870 P.2d 749 (1994). There, the court held that the clause allowing for a trial de novo did not violate public policy.

> Plaintiff argues that the Supreme Court, in deciding *Bruch,* did not take into account regulations issued by the Superintendent of Insurance. But such regulations are accorded the force of law. *Romero v. Dairyland Ins. Co.,* 111 N.M. 154, 803 P.2d 243 (1990). It is not at all likely that the Supreme Court somehow forgot that legislatively authorized rules and regulations have the force of law when it stated, in *Bruch,* that the provision at issue was not repugnant to public policy "as manifest in positive law." The only reasonable reading of *Bruch* is to assume that the Supreme Court knew what it was talking about. Any other view would be heresy, at least for a district court.

## DISCUSSION

{8} Although this case came before the district court on cross-motions for summary judgment, we do not view this as a "genuine issues" case. Rather, this is a case in which the operative facts are not in dispute. In this type of case, "the district court determines as a matter of law which movant is entitled to summary judgment." (internal citation and quotation marks omitted). *Gunaji v. Macias*, 2001–NMSC–028, ¶ 8, 130 N.M. 734, 31 P.3d 1008. We therefore review the district court's ruling under a de novo standard. *Id.*

{9} Padilla argues that, contrary to the district court's reasoning, *Bruch* is not authority for propositions that were not considered by the Supreme Court. We agree. *Bruch* held that the public policies manifested in the Uniform Arbitration Act are not offended by an arbitration provision providing for a trial de novo in a court of law if an arbitration award exceeds a certain amount. *Bruch* recognized that, because arbitration is a matter of contract, the parties to a contract providing for arbitration ordinarily may define for themselves the circumstances under which arbitration will be binding. The Supreme Court made absolutely no mention of the arguments, now asserted by Padilla, that an arbitration provision providing for non-binding arbitration where the insured recovers more than the minimum limit of uninsured motorist coverage violates the superintendent's regulations or the Unfair Claims Practices Act, or is otherwise contrary to the public policy manifested in the uninsured motorist statute. The Supreme Court did not discuss any of the cases to which Padilla refers us, such as *Mendes v. Auto. Ins. Co. of Hartford*, 212 Conn. 652, 563 A.2d 695, 699 (1989), which have held escape hatch arbitration provisions to be unenforceable.

{10} State Farm argues that we should presume that, in *Bruch*, the Supreme Court canvassed every conceivable source of public policy bearing upon the arbitration provision at issue in that case, regardless of whether the source of public policy was called to the Supreme Court's attention. We find no indication that the Supreme Court considered the arguments now presented by Padilla. We therefore apply the established rule that "cases are not authority for propositions not considered," and hold that *Bruch* does not necessarily control the outcome of the present case. *Fernandez v. Farmers Ins. Co.*, 115 N.M. 622, 627, 857 P.2d 22, 27 (1993); *Ramirez v. Dawson Prod. Partners, Inc.*, 2000–NMCA–011, ¶ 10, 128 N.M. 601, 995 P.2d 1043.

{11} Arbitration was adopted as a means of dispute resolution early on in the development of uninsured motorist coverage in large part as a response to the inherent conflict of interest created by the coupling of liability coverage with uninsured motorist coverage:

> Uninsured motorist insurance is sold as a package with liability insurance. Although arbitration has not been universally accepted for disputes between insurer and insured in the liability insurance area, the unique nature of uninsured motorist coverage may best explain why arbitration is used in uninsured motorist cases and not elsewhere.
>
> The basic reason why arbitration is appropriate in uninsured motorist disputes involves the inherent conflicts between insurer and insured. Contrary to the liability insurance situation, in which the insurer defends its own insured against allegations of negligence in order to avoid making payment to a third party, the insurer in this situation is trying to avoid liability to its own insured. This can be accomplished by showing ... that ... the uninsured motorist was not negligent or that the insured was negligent. In other words, in an uninsured motorist situation, the insurance company is placed in the position of defending the uninsured motorist against its own insured.

3 Eileen Swarbrick, *No–Fault and Uninsured Motorist Automobile Insurance*, § 28.00 at 28–3 to –5 (1997). The solution chosen by the insurance industry was to separate the forums in which the respective disputes between insured and insurer and insured and third-party are heard: the dispute between insured and insurer was relegated by contract to binding arbitration, leaving the dispute between the insured and the third-party subject to judicial resolution.

*Id.; see also* Charles A. Shaw, Comment, *Uninsured Motorist Arbitration*, 3 N.M.L.Rev. 220, 221–22 (1973) (hereafter "Shaw"); Gerald Aksen, *Arbitration of Automobile Accident Cases*, 1 Conn. L.Rev. 70, 78 (1968); 2 Alan I. Widiss, *Uninsured and Underinsured Motorist Insurance*, § 22.3 at 143–44 (2d ed.1987).

■ {12} Shortly after the enactment of the uninsured motorist statute in 1967, the superintendent of insurance promulgated regulations governing uninsured motorist endorsements. N.M. Dept. of Ins. Regulations Governing Insurance against Uninsured and Unknown Motorists, Art. 24, ch. 64, Rule I (Filed with the New Mexico Records Center as ID 67–2, December 1, 1967). These regulations required every endorsement to include a standard arbitration provision providing for binding arbitration of the issues of liability and damages. *Id.*, § 24–1–2, ¶ 8. The superintendent's regulations governing uninsured and unknown motorist coverage were re-promulgated on July 1, 1997,[1] and are now codified at 13 NMAC §§ 12.3.1 through 17.11 (1997).

{13} In 1969, the Legislature enacted NMSA 1953, § 64–24–107 (1969), which provided for de novo appeals from arbitration awards. We do not understand this statute as reflecting legislative disapproval of binding arbitration; rather, as the Supreme Court explained in *Dairyland Ins. Co. v. Rose*, Section 64–24–107 was enacted at a time when

> [i]t was generally assumed that an arbitration clause in an uninsured motorist policy [providing for binding arbitration] would be held unenforceable [under the general arbitration statute, NMSA 1953, §§ 22–3–1 through 22–3–8 (1859) ] because the disputes which would arise would not be present or existing controversies at the time of the signing of the policy, but would instead be future disputes.

92 N.M. 527, 530, 591 P.2d 281, 284 (1979). *See also* Shaw, *supra*, at 223; Alan I. Widiss, *A Guide to Uninsured Motorist Coverage* §§ 6.1 to 6.16 (1969). The de novo review statute was thought to remove any public policy objection to arbitration of uninsured motorist disputes. Shaw, *supra*, at 225.

{14} In *Dairyland*, the Supreme Court held that Section 64–24–107 was repealed by implication by the Legislature's enactment of the Uniform Arbitration Act. *Dairyland*, 92 N.M. at 530, 591 P.2d at 284. State Farm argues that "[i]f the statutory arbitration provision was superceded by the Uniform Arbitration Act, then surely any Department of Insurance regulation promulgated pursuant to the [uninsured motorist] statute was also superceded by the Uniform Arbitration Act." State Farm's argument is sufficient to direct our attention to the controlling legal principle: the repeal of a law repealing an even earlier law does not revive the first law. NMSA 1978, § 12–2–6 (1912). Although Section 12–2–6 expressly applies to "acts," we have recognized that rules of construction applicable to statutes may be applied to rules having the force and effect of law. *Costain v. Regulation & Licensing Dep't*, 1999–NMCA–119, ¶ 7, 128 N.M. 68, 989 P.2d 443. The superintendent's regulation requiring uninsured motorist endorsements to provide for binding arbitration was invalidated by the 1969 act providing for de novo appeals from arbitration awards. Even though the 1969 act was impliedly repealed by the enactment of the Uniform Arbitration Act, the implied repeal of the 1969 act did not revive the superintendent's regulation. Thus, from the effective date of the 1969 act until July 1, 1997, when the regulation was once again promulgated, New Mexico law did not require uninsured motorist endorsements to include a provision for binding arbitration. It appears from the record on appeal that all four of Padilla's policies were issued subsequent to the enactment of Section 64–24–107, but prior to the 1997 re-promulgation of the superintendent's regulations. At the time that Padilla's policies were issued, no regulation mandating binding arbitration was in effect. We therefore reject Padilla's argument that her policies incorporated the superintendent's regulation requiring binding

---

1. Pursuant to NMSA 1978, § 14–4–7.2(B) (1995), all rule-making agencies were required to "revise, restate and re-promulgate their existing rules as needed to expedite publication of the New Mexico Administrative Code."

arbitration, rendering State Farm's escape hatch arbitration provision void, unenforceable, and subject to reformation.

{15} As we have noted above, the Supreme Court held in *Bruch* that the public policy favoring arbitration does not preclude parties from contracting for non-binding arbitration, even though such provisions inevitably sacrifice many of the benefits of arbitration in order to further freedom of contract. The Supreme Court in its opinion in *Bruch* did not discuss the public policy underlying the uninsured motorist insurance statute and whether the remedial goals of the uninsured motorist statute would be undermined by non-binding arbitration, nor did the Supreme Court discuss the policies underlying Section 59A–16–20(K), which makes it unlawful for an insurer to engage in a practice of appealing from arbitration awards favorable to insureds for the purpose of compelling insureds to accept settlements in an amount less than awarded in arbitration. The present case requires us to address these issues.

■ {16} We interpret our uninsured motorist statute to protect the insured and to effectuate the remedial purpose of the statute. *Romero v. Dairyland Ins. Co.,* 111 N.M. 154, 156, 803 P.2d 243, 245 (1990). In *Sandoval v. Valdez,* 91 N.M. 705, 707, 580 P.2d 131, 133 (Ct.App.1978), we held that as a matter of public policy a contractual one-year time-to-sue provision in an uninsured motorist endorsement could not be enforced to deny the insured the benefit of a longer statute of limitations. We rejected the insurer's argument that the time-to-sue provision was "a purely contractual matter," noting that "contractual restrictions are void where they ... conflict with a statute granting uninsured motorist coverage." *Id.* at 708, 580 P.2d at 134.

{17} To the extent an insured incurs litigation costs in order to obtain the benefits of uninsured motorist coverage, the value of such coverage is diluted. *Huizar v. Allstate Ins. Co.,* 952 P.2d 342, 348 (Colo.1998). Escape hatch provisions such as that adopted by State Farm subject the insured to costly sequential litigation in order to obtain benefits over the minimum limits required by the Financial Responsibility law. If the insured

does not engage in all-out litigation in the arbitration, the insured runs the risk of an award at or below the minimum statutory limit, which under State Farm's endorsement binds the insured. If the insured succeeds, and recovers an amount over the minimum statutory limit, he or she faces a trial de novo on all issues, including the issues of the tortfeasor's liability and the insured's entitlement to damages *within* the limits of the Financial Responsibility law of New Mexico. Even if the insured prevails at both stages, State Farm's arbitration provision delays the receipt of benefits.

{18} State Farm's escape hatch arbitration provision exacerbates the conflict of interest between the insurer and insured created by the statutory coupling of liability insurance with uninsured motorist coverage. In *Silva v. State,* 106 N.M. 472, 476, 745 P.2d 380, 384 (1987), the Supreme Court abandoned mutuality as a prerequisite to application of collateral estoppel. In view of *Silva's* abandonment of mutuality, an unfavorable decision in the dispute with the insurer may support collateral estoppel against the insured in subsequent litigation with the uninsured motorist. State Farm's escape hatch arbitration provision forces its insured to run the gauntlet of collateral estoppel, not once, but twice.

{19} Further, the Supreme Court's freedom of contract analysis in *Bruch* proceeded on the assumption that the inclusion of an escape hatch arbitration provision is the result of a mutual agreement between insureds and insurers. *Bruch,* 117 N.M. at 213, 870 P.2d at 751. Subsequent to *Bruch,* this Court has considered escape hatch provisions in two decisions: *Allstate Ins. Co. v. Perea,* 2000–NMCA–070, ¶ 11, 129 N.M. 364, 8 P.3d 166, and the present case. It now appears that at least three insurance companies doing business in New Mexico—CNA, Allstate, and State Farm—are employing escape hatch provisions in their uninsured motorist endorsements. Cases from other jurisdictions indicate that escape hatch arbitration provisions have become widespread throughout the United States. *See generally* 15 *Couch on Ins.* § 214:17 (3d. ed.) (collecting cases). Thus, these provisions have taken on aspects of contracts of adhesion in which the insured

has no meaningful choice if she wishes to exercise her statutory right to purchase uninsured motorist coverage. *See Estep v. State Farm Mut. Auto. Ins. Co.,* 103 N.M. 105, 109, 703 P.2d 882, 886 (1985) (suggesting that in consumer insurance transactions "to say there is freedom of contract 'is to ignore reality' "). *Bruch's* freedom of contract analysis depended on assumptions about choices available to insureds whose validity can no longer be accepted without question.[2]

■ {20} *Bruch* held that the policies underlying the Uniform Arbitration Act did not, *of themselves,* outweigh the interest in freedom of contract. We conclude that public policy, as manifested in our uninsured motorist statute, distinguishes the present case from *Bruch.* Here, public policy as manifested in *both* our uninsured motorist statute *and* the Uniform Arbitration Act must be balanced against the insurer's interest in enforcing its non-binding arbitration provision. We conclude that the interests of insureds discussed above outweigh any interest State Farm may have in enforcing its non-binding arbitration provision as written. We hold, therefore, that notwithstanding the policy provision providing for de novo judicial review, an insured may enforce an arbitration award of uninsured/under-insured motorist benefits to the extent of the

> minimum limits for bodily injury or death and for injury to or destruction of property as set forth in [the Mandatory Financial Responsibility Act] and such higher limits as may be desired by the insured, but up to the limits of liability specified in bodily injury and property damage liability provisions of the insured's policy.

NMSA 1978, § 66–5–301(A) (1983). This reformation of the arbitration provision of State Farm's uninsured/under-insured motorist endorsement is necessary to avoid dilution of the benefits conferred by our uninsured motorist statute.

{21} In the present case, Padilla claims entitlement to benefits in excess of the "lim-

its of the Financial Responsibility law of New Mexico," pursuant to the judicial doctrine of stacking, not because she purchased higher limits on any single policy. *See Perea,* 2000–NMCA–070, ¶ 11, 129 N.M. 364, 8 P.3d 166. Under *Perea,* the term "the limits of the Financial Responsibility law of New Mexico" employed in State Farm's arbitration provision refers to $25,000, the minimum amount of liability coverage required by NMSA 1978, § 66–5–208(A) (1978), rather than the amount available by stacking the limits of the uninsured motorist coverages of Padilla's four policies. *Perea,* 2000–NMCA–070, ¶ 19, 129 N.M. 364, 8 P.3d 166. Should the arbitrators award Padilla damages in excess of $25,000, State Farm may exercise its contractual right to "trial on all issues." However, pursuant to NMSA 1978, § 44–7–11 (1971), Padilla may apply for judicial confirmation of the award to the extent of $25,000, together with such costs and fees as may be allowable, regardless of State Farm's decision to seek a trial de novo. Upon confirmation of the award, Padilla may enforce the judgment and may assert the judgment to collaterally estop State Farm from relitigating the uninsured/under-insured motorist's liability and Padilla's entitlement to $25,000 in damages. *See* NMSA 1978, § 44–7–14 (1971) (judgment upon order confirming arbitration award "shall ... be enforced as any other judgment").

■ {22} We reject Padilla's argument that we should invalidate State Farm's arbitration provision as violative of Section 59A–16–20(K). Section 59A–16–20(K) prohibits insurers from engaging in a general business practice of "making known to insureds or claimants a practice ... of appealing from arbitration awards in favor of insureds or claimants for the purpose of compelling them to accept settlements or compromises less than the amount awarded in arbitration." The Superior Court of Pennsylvania has noted in the context of a statute similar to Section 59A–16–20(K) and an arbitration provision similar to State Farm's that:

2. *Bruch* itself is to some extent responsible for this change in circumstances. *Bruch* was decided on February 23, 1994. The record contains an October 14, 1994, letter from State Farm to the superintendent of insurance stating "[i]n response to the Supreme Court Case [sic] of *Bruch v. CNA Insurance Company,* we revised our arbitration provision to state that there is a right to a trial when an award exceeds the Financial Responsibility limits."

By including the relevant clause in their policies, appellee has created a standardized threat. Any time a claimant or insured obtains any type of substantial arbitration award, he is faced with re-litigating all the issues at a trial.... The clause can be used to intimidate claimants and insureds into accepting less than the amount awarded in arbitration by confronting them with a possible trial.

*Zak v. Prudential Prop. & Cas. Ins. Co.*, 713 A.2d 681, 684–85 (Pa.Super.Ct.1998). While we agree with the Pennsylvania Superior Court that this type of escape hatch arbitration provision has considerable potential for abuse, we have not been provided with any information as to how it is being employed by State Farm, and, therefore, we are unwilling to hold that the mere inclusion of such a provision in a policy violates the public policy manifested by Section 59A–16–20(K) as a matter of law.

**CONCLUSION**

{23} The district court's order granting summary judgment in State Farm's favor is reversed and this case is remanded for entry of a decree granting Padilla relief consistent with this opinion.

{24} We deny Padilla's request for attorney's fees pursuant to NMSA 1978, § 39-2-1 (1977). Costs of this appeal shall be taxed as provided in Rule 12–403 NMRA 2001.

{25} **IT IS SO ORDERED.**

**WE CONCUR:** MICHAEL D. BUSTAMANTE, Judge, and CYNTHIA A. FRY, Judge.